Jimmy D. HARRIS, Petitioner,

v.

Milton T. POTTS et al., Respondents.

No. B–5651.

Supreme Court of Texas.

Dec. 8, 1976.

Dougal C. Pope, Houston, for petitioner.

McClain & Harrell, W. C. McClain, Conroe, Ross Hightower, Livingston, for respondents.

GREENHILL, Chief Justice.

Jimmy D. Harris, plaintiff below, sought title to an interest in a tract of land under an oral contract of sale which he had made with the owners in 1962. After he presented his evidence, the trial court instructed the jury to enter a verdict for the defendants and entered judgment that Harris take nothing. The court of civil appeals affirmed the judgment on the ground that Harris' suit was barred by the Statute of Frauds, Texas Business and Commerce Code, Section 26.01.[1] 528 S.W.2d 321. We affirm.

■ Because Harris' claim rests on an oral contract for the sale of realty, this case falls squarely under the Statute of Frauds; and his claim is unenforceable under the Statute unless he can show that the facts of this case lie within the exception announced in *Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114 (1921). That case allows the purchaser of realty to enforce the oral contract of sale if he shows that he made "payment of the consideration," that he took possession of the land, and that he made valuable improvements on the property. Further, "Each of these three elements is indispensable, and they must all exist." *Hooks, supra*, 229 S.W. at 1116.

■ The court of civil appeals held that Harris had not introduced any evidence that he took possession of the land, and therefore affirmed the trial court judgment. We agree that evidence of possession or occupancy was wholly lacking at the trial; and, since possession of land is one of the three essential elements under *Hooks*, this suit is barred by the Statute of Frauds.

The land in question was unoccupied and uncultivated. Since it was near Lake Livingston, it was contemplated that it might be developed as a subdivision and divided into some 250 lots. There is evidence that back around 1962, the tract in question was improved by the grading of some streets and the installation of some culverts for drainage. This work was evidently done by

1. Vernon's Texas Codes Annotated, Business & Commerce, § 26.01.

an independent contractor. There is no evidence that Harris supervised these activities, and he testified that he had no part in employing the contractor. Harris and the record owners signed a note which was executed to finance these improvements, and he paid his proportionate share of the principal and interest.[2] None of the lots was sold.

The evidence introduced by Harris shows that he never erected any type of structure on the land, neither a dwelling place, an office, nor even a tent. As he stated at the trial, "The only thing that would come close to having an office or anything was a picnic table we put there for writing up contracts instead of having to do it in the car." Neither he nor anyone connected with him ever spent even one night on the land. The only times that Harris entered the property were when he conducted cleaning operations on a few weekends, and when he subsequently, with the consent of one of the defendants, showed the property to prospective buyers. Harris' activities in cleaning the land consisted of clearing three of the 250 lots on the tract of brush and trees, whitewashing some trees, putting up street signs, and replacing survey stakes that had been knocked over by other peoples' cows or children. Harris never attempted to cultivate the land, to fence it, or to run livestock on it. In the six or seven *years* before trial, he never set foot on the property other than, in his words, "driving through occasionally."

We hold that these facts are no evidence that Harris took possession or occupancy of the property as is required under *Hooks v. Bridgewater, supra.* They may be evidence that Harris constructed valuable improvements; but there is a distinction between making improvements on land, in person or by agents, and the occupancy or possession of land. The *Hooks* rule requires actual possession or occupancy.

Since there is no evidence that Harris occupied or took possession of the land un-

der the oral contract of sale, the Statute of Frauds bars his claim; and the trial court's instructed verdict in favor of the defendants was proper. The judgment of the court of civil appeals is affirmed.

Dissenting opinion by DENTON, J., in which McGEE and SAM D. JOHNSON, JJ., join.

DANIEL, J., not sitting.

DENTON, Justice (dissenting).

I respectfully dissent.

I agree the law is settled that to relieve a parol sale of land from the operation of the statute of frauds, three things are necessary: "1. Payment of the consideration, whether it be in money or services. 2. Possession by the vendee. And 3. The making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor; or, without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced." *Hooks v. Bridgewater,* 111 Tex. 122, 229 S.W. 1114, 1116 (1921). I disagree with the application of the law in this case by the majority.

Except for disputed evidence concerning the amount of the consideration to be paid, the facts relating to an agreement by Potts and Ellzey each to convey an 11.1 percent interest to Harris are not materially disputed. Harris testified that the full purchase price for each 11.1 percent interest was $500 and that he paid this amount to both Potts and Ellzey. The canceled checks representing these payments are in evidence. Potts admitted the $500 payment had been made, but testified an additional $625 was due but had not been paid. The evidence concerning the conduct of Harris in making permanent improvements and taking possession is not disputed. Whether or not Harris' actions are sufficient to satisfy the permanent improvement and possession re-

---

**2.** We do not have before us an action to recover the consideration paid, or one for the recovery of other sums used to improve the proper-

ty. The *Hooks* opinion stated in part, "The value of the consideration may . . . be recovered." 229 S.W. at 1117.

quirements of *Hooks v. Bridgewater, supra,* is the question to be decided.

The tract of land involved here was located near Lake Livingston and had been subdivided and platted as "Lake Livingston Subdivision." It contained 250 lots. The tract was vacant, raw land just prior to the time the oral contract was entered into. Streets and culverts were in the process of being put in when Harris entered into the transaction. Thereafter, streets were graded and culverts were placed at the subdivision entrance and low places for drainage. Potts, Lee Ellzey, J. S. Holleman, the other owner, and Harris, borrowed $3,000 for the purpose of grading the streets and placing culverts on the premises. It is undisputed that Harris signed the original note and subsequent renewals, and that he paid a total of $1257.51 which represented his proportionate share of the principal and interest. Harris cleared three of the lots by cutting the trees and brush. He set up a table on the cleared area for the purpose of writing contracts for the sale of lots. He whitewashed the remaining trees in the cleared area. He and J. S. Holleman procured and erected 14 or 15 permanent street signs on the property. Harris went on the property on numerous occasions principally on weekends to show the lots and offer them for sale, although no lots were sold. Mr. Potts testified he knew of Harris' work on the property and of his efforts to sell the lots in the subdivision. Sale of the lots was discontinued when the Trinity River Authority filed suit against the City of Houston to enjoin further development in the Lake Livingston area.

Possession by a vendee should be considered in light of the transaction alleged. Immediately upon the completion of the alleged sale, Harris went upon the land and performed the various acts set out. The payment of his share of the street grading and culverts; erecting the permanent street signs; the cleaning of the lots; whitewashing trees; being on the tract and offering the lots for sale to prospective purchasers, are acts which constitute possession of the land. These acts show that Harris exercised the right of control of the property with the power to use or enjoy the property. *Powell v. Wiley,* 141 Tex. 74, 77, 170 S.W.2d 470, 472 (1943). It was incumbent upon Harris to show he exercised the control of an owner of an undivided 22.2 percent interest in raw, subdivided land. I am of the opinion that he did so. *Johnson v. Perkins,* 140 S.W.2d 282 (Tex.Civ.App.— Beaumont 1940, writ dism'd jdgmt. cor.). See also Comment, *Character of Possession Necessary to Satisfy the Rules of Hooks v. Bridgewater,* 22 Baylor L.Rev. 361 (1970) and Comment, *The Doctrine of Part Performance in Texas,* 1 Tex.Tech.L.Rev. 325, 330 (1970). I am convinced the evidence presented here was sufficient to raise the issues of possession and valuable permanent improvements on the land in reliance upon the oral agreement between Harris and Potts and Ellzey. *Jones v. Mawman,* 145 Tex. 596, 200 S.W.2d 819 (1947). Therefore, I believe, the trial court erred in instructing a verdict for the defendants.

I would reverse the judgment of the court of civil appeals and remand the cause for a new trial.

McGEE and SAM D. JOHNSON, JJ., join in this dissent.