**Salvador BOCHAS and Martina Loredo, Appellants,**

v.

**The STATE of Texas, Appellee.**

No. 13–95–275–CV.

Court of Appeals of Texas, Corpus Christi.

May 29, 1997.

Rehearing Overruled July 24, 1997.

---

**66**

Rene B. Gonzalez, Brownsville, for Appellants.

Luis V. Saenz, Robert H. Moore, Jr., Asst. County Criminal Dist. Attorney, Yolanda De Leon, District Attorney, Brownsville, for Appellee.

Before DORSEY, FEDERICO G. HINOJOSA, Jr. and CHAVEZ, JJ.

## OPINION

CHAVEZ, Justice.

Appellants challenge forfeiture proceedings in the district court regarding a home in Brownsville, Texas where 1,500 pounds of marijuana were discovered by the police, title to which residence was forfeited to the State of Texas in the case below. We will affirm.

### Facts

Martina Loredo, appellant, is the mother of Salvador Bochas, appellant. Loredo lives in Brownsville. Appellant Bochas, who is presently incarcerated, is married to Leticia Bochas, who is also presently incarcerated. Prior to incarceration, Salvador and Leticia Bochas lived in Brownsville. Salvador Bochas, Jr., is the son of appellant Bochas.

On December 6, 1994, officers of the Brownsville Police Department executed a search warrant for a residence located at 255 Fresno, Brownsville, Cameron County, Texas.[1] Present in the home at the time of the warrant execution were Salvador Bochas, Jr., and a friend, neither of whom are parties to the instant proceeding. Leticia Bochas was, purportedly, out of town at the time of the warrant execution, and appellant Bochas was, ostensibly, in prison. Within the home, officers found approximately 1,500 pounds of marijuana. It was determined that the mari-

---

1. We shall refer to said property as "255 Fres- no."

juana belonged to Leticia Bochas, and she was convicted for its possession.

It is undisputed that, at the time of the warrant execution, title to the real property was vested in Cornelio Medellin, of Houston, Texas. However, utility services for the home were obtained in the name of Leticia Bochas. The record reflects that, essentially contemporaneously with the trial of Leticia Bochas for possession of the marijuana found in the residence, title to the real property was transferred to appellant Loredo.

The State sought forfeiture of the property pursuant to Chapter 59 of the Texas Code of Criminal Procedure. On March 29, 1995, the State filed its "Plaintiff's Original Petition and Notice of Intended Seizure and Intended Forfeiture" for 255 Fresno, and improvements thereon, etc., naming Leticia Bochas, appellant Salvador Bochas, appellant Martina Loredo and Cornelio Medellin as defendants. All parties filed a general denial. Prior to trial, Medellin filed a waiver of interest in the property. Leticia Bochas did not appear for and was not represented at trial. Only appellants were represented at the bench trial which resulted in a judgment of forfeiture.

Although the record reveals that she pleaded no affirmative defenses, Loredo's trial strategy generally consisted of an attempt to establish an "innocent owner" defense, pursuant to article 59.02(c) of the Texas Code of Criminal Procedure. The explanation given by Loredo in support of her defense is summarized as follows:

- Although titled in the name of Medellin, 255 Fresno had actually been under a contract for sale to Loredo from Medellin since, approximately, 1985.
- Loredo, who did not reside at 255 Fresno, allowed her son (appellant Bochas) and daughter-in-law (Leticia Bochas) to construct a home on the property.
- Her motivation for doing this was to ensure adequate shelter for her grandchildren (i.e., the children of Salvador and Leticia Bochas).
- Monthly installment payments for 255 Fresno were given in cash to Leticia Bochas, who ensured their delivery to Medellin.
- Improvements to the realty were entirely constructed with funds of appellant Bochas.
- Aside from delivering installment payments to Leticia Bochas for delivery to Medellin, Loredo was largely unaware of the affairs of appellant Bochas and his wife.
- That the ten-year contract for sale terminated at approximately the same time that her daughter-in-law was being tried as owner of the 1,500 pounds of marijuana found at 255 Fresno was sheer coincidence.

Having lost in the trial of the forfeiture action, Salvador Bochas and Loredo commenced the instant appeal.[2] Appellants bring five points of error on appeal alleging:

- lack of in rem jurisdiction in the trial court[3];
- legal and factual insufficiency for application of Chapter 59 of the Texas Code

**2.** Whether Salvador Bochas has standing to prosecute the instant appeal is dubious. At most, the facts reveal that he would have a claim for improvement to the realty which, essentially, is derivative of Loredo's claim. See Sharp v. Stacy, 535 S.W.2d 345, 351 (Tex.1976)("The principle is well established in equity that a person who in good faith makes improvements upon property owned by another is entitled to compensation therefor."). However, Leticia Bochas, the wife of appellant Bochas, was convicted of possessing the 1,500 pounds of marijuana found at 255 Fresno. Accordingly, she does not contest forfeiture of any property which she presumptively jointly owned with her husband, appellant Bochas. Community property is not exempt from forfeiture where such property is used by a spouse in a manner which violates the Texas

Controlled Substances Act (Chapter 481 of the Texas Health & Safety Code), even though such property is so used by one spouse without the knowledge or consent of the other spouse. See Gaston v. State, 641 S.W.2d 261, 264 (Tex.App.— Houston [14th Dist.] 1982, no pet.). In the interest of justice, though, we entertain the appeal of Salvador Bochas.

**3.** We note that forfeiture is an in rem civil proceeding. See State v. Lot 10, Pine Haven Estates, 900 S.W.2d 400, 402 (Tex.App.—Texarkana 1995, no writ); $191,452.00 v. State, 827 S.W.2d 430, 433 (Tex.App.—Corpus Christi 1992, writ denied); Costello v. State, 774 S.W.2d 722, 723 (Tex.App.—Corpus Christi 1989, writ denied).

of Criminal Procedure to 255 Fresno; and

- legal and factual insufficiency for the court's rejection of Loredo's "innocent owner" defense.

We note that appellants did not request findings or conclusions at the district court.

### Forfeiture of contraband

Chapter 59 ("Forfeiture of Contraband") of the Texas Code of Criminal Procedure provides a statutory regime for the forfeiture of contraband, and it is the basis of the forfeiture action commenced by the State in the district court. Under this statute, any property classified as contraband is subject to seizure and forfeiture. TEX.CRIM. PROC.CODE ANN. art. 59.02(a) (Vernon Supp.1997). "Contraband" is defined as any real, personal, tangible, or intangible property that is used or intended to be used in the commission of a felony under Chapter 481 of the Texas Health & Safety Code, the Texas Controlled Substances Act.[4] Id., art. 59.01(2)(B)(i) (Vernon Supp.1997).

The mandatory language under art. 59.05(e) provides that "[i]f the court finds that all or any of the property is subject to forfeiture, the judge shall forfeit the property to the state...." Id., art. 59.05(e) (Vernon Supp.1997). In a forfeiture proceeding, the State must prove by a preponderance of the evidence that the seized property is contraband and, therefore, subject to forfeiture. Id., art. 59.05(b) (Vernon Supp.1997). See also 1.70 Acres, .20 Acres, and .28 Acres of Real Property and Structures Thereon (Mizell) v. State, 935 S.W.2d 480, 483 (Tex. App.—Beaumont 1996, n.w.h.).

■ Chapter 59 of the Texas Code of Criminal Procedure also provides a safe harbor for "innocent owners." Pursuant to article 59.02(c), "[a]n owner or interest holder's interest in property may not be forfeited ... if the owner or interest holder:

(1) acquired and perfected the interest before or during the act or omission giving rise to forfeiture or, if the property is real property, he acquired an ownership interest, security interest, or lien interest before a lis pendens notice was filed ...; and

(2) did not know or should not reasonably have known of the act or omission giving rise to the forfeiture or that it was likely to occur at or before the time of acquiring and perfecting the interest or, if the property is real property, at or before the time of acquiring the ownership interest, security interest, or lien interest."

The statutory safe harbor is an affirmative defense.[5]

### Standard of review
#### State's entitlement to forfeiture

■ Appellants contend that no evidence supports the court's application of Chapter 59 of the Texas Code of Criminal Procedure to 255 Fresno. When deciding a "no evidence" point, we must consider only the evidence and inferences tending to support the finding of the trier of fact and disregard all evidence and inferences to the contrary. Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex.1995). We will uphold the finding if more than a scintilla of evidence supports it. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. Burroughs Wellcome, 907 S.W.2d at 499.

■ Appellants also contend that insufficient evidence supports the court's application of Chapter 59 in the instant case. A trial court's findings of fact are reviewed for factual sufficiency of the evidence under the same legal standards as applied to review jury verdicts for factual sufficiency of the evidence. See Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex.1991). In

---

4. Pursuant to section 481.121(a),(b)(5) of the Texas Health & Safety Code, possession of 1,500 pounds of marijuana is a second degree felony.

5. See, generally, Gorman v. Life Ins. Co., 811 S.W.2d 542, 546 (Tex.1991) ("Pleading an affirmative defense permits introduction of evidence which does not tend to rebut the factual propositions asserted in the plaintiff's case, but which seeks to establish an independent reason why the plaintiff should not recover.").

reviewing a factual sufficiency point, we must weigh all of the evidence in the record. *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex. 1980). Findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

### Innocent owner defense

■ Appellants contend that the trial court erred as a matter of law in rejecting Loredo's innocent owner defense. Appellants attacking the legal sufficiency of a failure to find an issue on which they had the burden of proof must demonstrate on appeal that the evidence conclusively established all vital facts in support of the issue as a matter of law. *See Ritchey v. Crawford*, 734 S.W.2d 85, 86 (Tex.App.—Houston [1st Dist.] 1987, no writ); *Meyerland Community Improvement Ass'n v. Temple*, 700 S.W.2d 263, 267 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

■ Appellants also contend that the court's rejection of their innocent owner defense was against the great weight and preponderance of the evidence. We must, therefore, examine the entire record in disposing of this point. *See, e.g., Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex.1973). The standard of review requires us to determine whether some evidence supports the failure to find, and then determine, in light of the entire record, whether the failure to find is manifestly unjust. *Id.*

### Due process

Appellants contend that the trial court lacked in rem jurisdiction because 255 Fresno had not been "seized" at the time of, presumably, the forfeiture trial. Appellants raise a due process complaint.[6] At the heart

of appellants' complaint is article 59.04 of the Texas Code of Criminal Procedure.

Article 59.04(b) provides that "[a] forfeiture proceeding commences ... when the attorney representing the state files a notice of seizure and intended forfeiture in the name of the state[.]" In the instant case, the State filed a pleading entitled "Plaintiff's Original Petition and Notice of Intended Seizure and Intended Forfeiture" ("State's petition"). The State's petition differs from the pleading envisaged by article 59.04(b), in that the State's petition gives notice of *intended* seizure, whereas article 59.04(b) countenances *actual* seizure.

Article 59.01(8) of the Texas Code of Criminal Procedure defines "seizure" as "the restraint of property by a peace officer under Article 59.03(a) ∴.., whether the officer restrains the property by physical force or by a display of the officer's authority." Article 59.03(a) of the Texas Code of Criminal Procedure provides that "[p]roperty subject to forfeiture under this chapter may be seized by an peace officer under authority of a search warrant." Aside from the foregoing, Chapter 59 of the Texas Code of Criminal Procedure provides no guidance as to the manner in which real property is to be seized by a peace officer.

### Discussion

■ Because no findings of fact were requested or filed, we presume that the trial court made all necessary findings in support of its judgment. *See 1.70 Acres, .20 Acres, and .28 Acres of Real Property and Structures Thereon (Mizell)*, 935 S.W.2d at 483 (citing *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex.1992); *State v. One Residence Located at 1204 North 12th Street, Alamo, Tex.*, 907 S.W.2d 644, 645 (Tex. App.—Corpus Christi 1995, no writ)).

---

6. "The Due Process Clause of the Fifth Amendment guarantees that '[n]o person shall ... be deprived of life, liberty, or property, without due process of law.'" *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48, 114 S.Ct. 492, 498, 126 L.Ed.2d 490 (1993). The established rule is that "individuals must receive notice and an opportunity to be heard before the [g]overnment deprives them of property." *Id.*

(citing *United States v. $8,850*, 461 U.S. 555, 562, n. 12, 103 S.Ct. 2005, 2011, n. 12, 76 L.Ed.2d 143 (1983); *Fuentes v. Shevin*, 407 U.S. 67, 82, 92 S.Ct. 1983, 1995, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337, 342, 89 S.Ct. 1820, 1823, 23 L.Ed.2d 349 (1969) (Harlan, J., concurring); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950)).

### Due process

■ As mentioned above, the State's petition differs from the pleading envisaged by article 59.04(b), in that the State's petition gives notice of *intended* seizure, whereas Article 59.04(b) countenances *actual* seizure. However, we find this to be a distinction without a difference, in light of the decision of the Supreme Court of the United States in *United States v. James Daniel Good Real Property*, 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993).

In *James Daniel Good Real Property*, the Court held that the *ex parte* seizure of real property, under the federal statue providing for forfeiture of property used in connection with drug transactions, without affording the property owner notice and the opportunity to be heard prior to seizure, and without exigent circumstances allowing notice and hearing procedures to be dispensed with, violated the property owner's due process rights. *James Daniel Good Real Property*, 510 U.S. at 61–63, 114 S.Ct. at 505.

"Because real property cannot abscond, the court's jurisdiction can be preserved without prior seizure." *James Daniel Good Real Property*, 510 U.S. at 57, 114 S.Ct. at 503. "It is true that seizure of the res has long been considered a prerequisite to the initiation of in rem forfeiture proceedings." *Id.* "This rule had its origins in . . . admiralty cases, which involved the forfeiture of vessels and other moveable personal property." *Id.* "But when the res is real property, rather than personal goods," forfeiture may be adjudicated without *actual seizure. Id.*

All that is necessary to invoke the court's in rem jurisdiction is that the res be constructively "within the reach of the Court." *Id.* In the instant case, law enforcement compliance with article 59.01(8) of the Texas Code of Criminal Procedure brought 255 Fresno within the reach of the trial court. The procedures employed by the State's attorney in the instant case were both constitutional and in conformity with Chapter 59 of the Texas Code of Criminal Procedure. *See, generally*, F. LEE BAILEY & HENRY B. ROTHBLATT, HANDLING NARCOTIC & DRUG CASES § 449.2 (Pamph.1996) ("It is well established that, absent exigent circumstances,

an individual must be given notice and an opportunity to be heard before the government deprives that individual of his or her property."); GEORGE E. DIX & ROBERT O. DAWSON, 43 TEXAS PRACTICE § 49.49 (1995) ("In the case of nonemergency seizures of real property . . ., the Due Process Clause of the United States Constitution requires preseizure notice and opportunity for an adversarial hearing. [footnote omitted]."); JOHN WESLEY HALL, JR., SEARCH AND SEIZURE § 19:11 (2d ed. 1993) ("Seizures of premises for drug forfeiture must comply with the Fourth Amendment, and in rem warrants issued solely on the filing of a complaint by the government are unconstitutional. [footnote omitted]. The exigent circumstances justification for warrantless seizures [footnote omitted] simply does not apply to real property because it can hardly be removed prior to seizure. [footnote omitted].").

The first point of error is overruled.

### State's entitlement to forfeiture

Article 59.01(2)(A)(i) provides that "contraband" includes any real property used in the commission of a second degree felony. As noted above, pursuant to section 481.121(a),(b)(5) of the Texas Health & Safety Code, possession of 1,500 pounds of marijuana is a second degree felony. Thus, the State was entitled to prove that 255 Fresno was used to facilitate the possession of approximately 1,500 pounds of marijuana by Leticia Bochas.

■ In a forfeiture proceeding, the State must prove a link or nexus between the property seized and the drugs. *See Poindexter v. State*, 802 S.W.2d 386, 389 (Tex.App.—Corpus Christi 1990, no writ). In the instant case, the State established, through live testimony and photographs of the crime scene, that:

- Police officers executing a search warrant discovered approximately 1,500 pounds of marijuana at 255 Fresno.
- Leticia Bochas lived at 255 Fresno.
- Leticia Bochas was determined be the possessor of the approximately 1,500 pounds of marijuana found at 255 Fresno.

- The marijuana was stored in closets and cabinets at 255 Fresno, as well as within luggage found there.
- A wooden countertop, upon which a large roll of cellophane was discovered, was stained by green plant residue.
- Narcotics agents found 255 Fresno to have characteristics typical of a marijuana repackaging facility.

Accordingly, more than a scintilla of evidence supports the conclusion that 255 Fresno was used in the underlying felony; such conclusion supports the judgment of forfeiture.

While appellants contend that the State's witnesses did not sufficiently identify the subject of their testimony, 255 Fresno, as the subject of the State's petition, we disagree. We have reviewed the entire record and determine that no confusion was engendered in the trial court. In any event, appellants have failed to preserve a complaint in this regard for our review. Weighing all of the evidence in the record, we also find that the trial court's application of Chapter 59 of the Texas Code of Criminal Procedure was not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. 255 Fresno was unquestionably used in the underlying felony. The second and third points of error are overruled.

### Innocent owner defense

■ In support of their claim that the evidence is insufficient to support the trial court's judgment, appellants assert the innocent owner defense of article 59.02(c) of the Texas Code of Criminal Procedure.[7] As part of this affirmative defense, appellants carry the burden of proving that they acquired an ownership interest in the property prior to, or during, the act giving rise to forfeiture.[8] *See $9,050.00 in U.S. Currency v. State,* 874 S.W.2d 158, 163 (Tex.App.—Houston [14th Dist.] 1994, writ denied). They must further prove that they did not know, or should not reasonably have known of the act that gave rise to the forfeiture, or that the act was likely to occur at the time, or before the time,

that they acquired their interests in the property. *Id.*

■ In the instant case, the discovery of 1,500 pounds of marijuana at 255 Fresno on December 6, 1994 was the act giving rise to the forfeiture. Loredo has not proven that her acquisition of an ownership interest in 255 Fresno arose prior to December 6, 1994. It was undisputed at trial that legal title to 255 Fresno was transferred to Loredo essentially contemporaneously with the trial of Leticia Borchas for possession of the marijuana discovered at 255 Fresno on December 6, 1994.

Prior to December 6, 1994, the precise nature of Loredo's ownership interest, if any, in 255 Fresno is unclear. The record reveals no written contract of sale between Loredo and Medellin. Absent a written contract, Loredo's realty contract of sale is presumably unenforceable, pursuant to section 26.01 of the Texas Business & Commerce Code.

*Hooks v. Bridgewater,* 111 Tex. 122, 229 S.W. 1114 (1921), is the seminal case wherein the Supreme Court of Texas enumerated three requirements to relieve a parol sale of land from the operation of the statute of frauds. The elements are: (1) payment of consideration; (2) possession by the transferee; and (3) making by the transferee of permanent and valuable improvements upon the land with the consent of the transferor. 229 S.W. at 1116. *See also Harris v. Potts,* 545 S.W.2d 126, 126 (Tex.1976); *Sharp v. Stacy,* 535 S.W.2d 345, 347 (Tex.1976). We do note that the cases in this state dealing with parol transfers of real estate have not established exclusive physical possession by the transferee as an absolute requirement for relief from the statute of frauds. *Sharp,* 535 S.W.2d at 348.

Loredo's explanation as to the alleged acquisition of her ownership interest in 255 Fresno was inconclusive. At trial, Loredo testified that, in 1985, she had entered into a ten-year promissory agreement with Medellin of Houston. Loredo's evidence as to this ownership interest in 255 Fresno consists of

7. The record does not reveal that appellants have pled this affirmative defense in accordance with Rule 94 of the Texas Rules of Civil Procedure.

8. In this regard, we shall primarily focus on appellant Loredo.

37 payment receipts allegedly signed by Medellin, which purportedly evidence the promissory transaction. The receipts, however, do not appear to cover the entire ten-year transaction that Loredo testified to. Further, Medellin, who is the only purported signatory to the documents, did not corroborate Loredo's testimony as to the authenticity of the receipts. Appellants did not prove that Loredo gave consideration for 255 Fresno.

While appellants proved that Loredo, if her explanation is to be believed, did possess 255 Fresno by and through her son, daughter-in-law, and their family, appellants did not surmount the burden of proving that improvements to 255 Fresno were made with Medellin's permission. Loredo testified at trial that appellant Bochas constructed the house at 255 Fresno with his own funds. No evidence was offered as to the transferor's (Medellin's) consent to this construction. Having failed to meet the three-prong test of *Hooks*, appellants cannot enforce their rights, if any, under a parol contract to sell realty.

■ Our holding that appellants failed to prove the existence of an enforceable contract between Medellin and Loredo is central to our analysis of the innocent owner defense, as a valid contract of sale *does* effect a change of ownership. *See Bucher v. Employers Casualty Co.*, 409 S.W.2d 583, 585 (Tex.Civ.App.—Fort Worth 1966, no writ). Under such a contract the purchaser becomes full beneficial or equitable owner of the property. *Id.* All that remains in the seller is a bare legal title, more in the nature of a security title to guarantee payment of the purchase price than anything else. *Id.*

■ Even if appellants had not failed to prove that Loredo acquired her interest in 255 Fresno prior to December 6, 1994, appellants are further required to prove that they did not know, or should not reasonably have known of the act that gave rise to the forfeiture, or that the act was likely to occur at the time, or before the time, that Loredo acquired her interest in the property. Loredo testified that she read a newspaper report concerning the discovery of 1,500 pounds of marijuana at 255 Fresno. It is unclear pre-cisely when she read this newspaper report. As no finding was requested, we assume that Loredo learned of the marijuana's discovery rather promptly. She then proceeded to execute documents transferring title of 255 Fresno from Medellin to herself. Loredo's defense is further eroded by her testimony as to her at least monthly contact with Leticia Bochas, who was the alleged courier for Loredo's installment payments to Medellin.

Appellants' innocent owner defense was not conclusively established in all of its vital facts. Indeed, it was never properly raised in the trial court. Some evidence supports the trial court's failure to find that appellants are innocent owners of 255 Fresno; in light of the entire record, this determination is not manifestly unjust. The fourth and fifth points of error are overruled.

The judgment of the trial court is AFFIRMED.