IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00128-CV

 

One Ford Mustang, VIN 1FAFP40471F207859,

                                                                                                Appellant

 v.

 

The State of Texas,

                                                                                                Appellee

 

 

 



From the 13th District Court

Navarro County, Texas

Trial Court No. 05-00-14653-CV

 



Opinion



 








            Shannon Raye brings this appeal from
an order forfeiting a Ford Mustang which was used in the commission of a
narcotics crime.  Raye contends in two issues that the judgment is erroneous
because she established as a matter of law that: (1) she is the owner of the
Mustang and did not know and should not reasonably have known of the acts
giving rise to the forfeiture; and (2) the person arrested in the Mustang
breached his contract with Raye for its purchase.  We will reverse and render.

 

Background

            Raye purchased the Mustang which is
the subject of this proceeding in May 2004.  She signed a “contract of sale”
with Chris Harris for the Mustang in March 2005.[1] 
According to the terms of the contract, Harris agreed to pay $7,500 for the
car.  He made a down payment of $1,000 and agreed to make twenty-one monthly
payments of $300 and one payment of $200 for the remaining $6,500 owed.  For
her part, Raye agreed to maintain insurance on the car “for [the] duration of
[the] contract.”[2]

            An Arlington police officer arrested
Harris in July 2005 for possession of twenty-eight grams of methamphetamine. 
Harris was driving the Mustang at the time of his arrest.  A Navarro County sheriff’s deputy arrested Harris in October 2005 for possession with intent to
deliver forty-two grams of methamphetamine.  Harris was driving the Mustang on
this occasion as well, and it was seized for forfeiture.

            The State served Raye with notice of
the forfeiture proceeding because she is the registered owner of the Mustang. 
Raye filed a general denial, asserted the innocent-owner defense, and asserted
a cross-claim against Harris for breach of their contract.

            Harris failed to appear at the
forfeiture hearing.  The State called three witnesses: the Arlington police
officer and two Navarro County sheriff’s deputies.  The police officer
described Harris’s Arlington arrest and testified on cross-examination that he
had no knowledge that Raye was involved in any way with Harris’s narcotics
offense or had any knowledge of the offense.

            Deputy Clint Andrews testified to the
circumstances of Harris’s Navarro County arrest.  Deputy Andrews stated on
cross-examination that he did not know Raye, that he was not aware of any
involvement on her part in narcotics trafficking, that he had no evidence to
suggest that she was involved in Harris’s crime, and that there is nothing to
suggest that she had knowledge that Harris was selling narcotics.

            Deputy Stan Farmer also participated
in Harris’s arrest and the ensuing investigation.  Deputy Farmer testified that
Raye was the registered owner of the Mustang.  He had learned of Raye’s
boyfriend Jared Coker through “narcotics information.”  To Farmer’s knowledge,
Coker had never been arrested for a narcotics crime.  He had no information to
indicate that Raye had ever been involved in narcotics trafficking or that she
would have knowledge of any narcotics trafficking.

            Raye testified that Coker negotiated
the transaction with Harris for the sale of her car.  Coker and she had lived
together for about ten years.  In describing Coker’s relationship with Harris,
she characterized them as “acquaintances” rather than “good friends.”  She
personally had seen Harris on only a few occasions.  She understood the
agreement with Harris to mean that she would maintain title to the car until he
paid the purchase price in full.  She thought Coker may have experimented with
marihuana when he was younger but denied that he had “a methamphetamine
problem” as far as she was aware.  She did not know that Harris was involved in
narcotics trafficking until a few days after his Navarro County arrest.  Harris
still owes her $4,500 under their contract.

Forfeiture Statutes

            Chapter 59 of the Code of Criminal
Procedure authorizes the forfeiture of “contraband,” which is defined as
property used in the commission of various enumerated felonies and misdemeanors
including any felony under Chapter 481 of the Health and Safety Code, commonly
known as the Texas Controlled Substances Act.[3]  See
Tex. Code Crim. Proc. Ann. arts.
59.01(2)(B)(i), 59.02(a) (Vernon 2006).

            Article 59.02(c) provides an innocent-owner
defense to forfeiture which requires a person whose property has been seized
for forfeiture to establish: (1) she acquired or perfected her ownership
interest before or during the act or omission giving rise to forfeiture; and
(2) she did not know and should not reasonably have known of that act or
omission or that it was likely to occur at or before acquiring the ownership
interest.[4]  Id. art. 59.02(c)(1) (Vernon 2006); $18,800 v. State, 961 S.W.2d 257, 260 (Tex. App.—Houston [1st Dist.] 1997, no writ); Bochas v. State, 951 S.W.2d 64, 71
(Tex. App.—Corpus Christi 1997, writ denied).

 

 

Standard of Review

            A forfeiture proceeding under Chapter
59 is a civil in rem proceeding governed by the procedural rules applicable
to civil trials and appeals generally.  See State v. Silver
Chevrolet Pickup, 140 S.W.3d 691, 692 (Tex. 2004) (per curiam); Hardy v.
State, 50 S.W.3d 689, 692 (Tex. App.—Waco 2001), aff’d, 102 S.W.3d 123
(Tex. 2003); see also Tex. Code
Crim. Proc. Ann. art. 59.05(a), (b) (Vernon 2006).  Thus, the
appropriate standard of review on appeal depends on which party had the burden
of proof at trial.  See Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241-42
(Tex. 2001); Lifshutz v. Lifshutz, 199 S.W.3d 9, 17-18 (Tex. App.—San Antonio 2006, pet. denied); Hardy, 50 S.W.3d at 692; Beard v. Beard,
49 S.W.3d 40, 54-55 (Tex. App.—Waco 2001, pet. denied).

            The burden is on the owner to
establish the innocent-owner defense by a preponderance of the evidence.  Tex. Code Crim. Proc. Ann. art.
59.02(c); $18,800, 961 S.W.2d at 260; Bochas, 951 S.W.2d at 71.  When
the appellant asserts that there is no evidence to support an adverse finding
on which she had the burden of proof, the standard of review has been
traditionally stated thusly:

we construe the issue as an assertion that the
contrary was established as a matter of law.  We first search the record for
evidence favorable to the finding, disregarding all contrary evidence.  If we
find no evidence supporting the finding, we then determine whether the contrary
was established as a matter of law.

 

Beard,
49 S.W.3d at 54-55 (citing Sterner v. Marathon Oil Co., 767 S.W.2d 686,
690 (Tex. 1989) (other citations omitted); accord Dow Chem., 46 S.W.3d at
241; Lifshutz, 199 S.W.3d at 17-18; Hardy, 50 S.W.3d at 695; $18,800,
961 S.W.2d at 261.

            However, the appropriate enunciation
of this standard must be reconsidered in light of the Supreme Court’s recent
decision in City of Keller v. Wilson.  168 S.W.3d 802 (Tex. 2005).

The final test for legal sufficiency must always
be whether the evidence at trial would enable reasonable and fair-minded people
to reach the verdict under review.  Whether a reviewing court begins by
considering all the evidence or only the evidence supporting the verdict,
legal-sufficiency review in the proper light must credit favorable evidence if
reasonable jurors could, and disregard contrary evidence unless reasonable
jurors could not.

 

Id. at
827.

            Thus, consistent with City of
Keller, a correct restatement of the appropriate standard of review is as
follows:

When an appellant asserts that there is no
evidence to support an adverse finding on which she had the burden of proof, we
construe the issue as an assertion that the contrary was established as a
matter of law.  We first search the record for evidence favorable to the
finding, disregarding all contrary evidence unless a reasonable factfinder
could not.  If we find no evidence supporting the finding, we then
determine whether the contrary was established as a matter of law.

 

See Dallas County Constable v. Garden City Boxing Club, Inc., 219 S.W.3d 613, 616 (Tex. App.—Dallas 2007, no pet.); Sellers v.
Foster, 199 S.W.3d 385, 392 (Tex. App.—Fort Worth 2006, no pet.).

Ownership

            Raye contends as part of her first issue
that she established as a matter of law that she is the owner of the Mustang. 
The facts pertinent to Raye’s interest in the Mustang are not in dispute. 
Rather, the parties’ dispute centers on the legal conclusions to be drawn from
those facts.

            The court made the following findings
of fact and conclusions of law regarding Raye’s interest in the Mustang:

1.                 
The evidence seems clear that
the record title owner of the vehicle intended to sell and did sell the subject
vehicle to the person from whom it was seized in connection with a narcotics
case.

 

2.                 
The evidence also discloses
that the seller and buyer did not comply with the certificate of title act. 
The buyer made payments on the vehicle and seller apparently intended to retain
a lien, but no lien was perfected as required by law.

 

3.                 
While a certificate of title
is presumptive evidence of ownership, it may be rebutted by competent
evidence.  The evidence in this case clearly discloses a sale from the record
owner to the person from whom it was seized.

 

4.                 
A lien upon a motor vehicle
may be perfected only by compliance with the certificate of title act.

 

Based upon the foregoing, the Court finds that the
vehicle was sold to Harris and that the seller, Ms. Raye failed to perfect her
lien.  The vehicle is forfeited and Ms. Raye is free to pursue her legal
remedy, futile though it may be.

 

            Thus, the court found that Raye did
not own the Mustang but was a lienholder who had failed to perfect her lien. 
Accordingly, the court rendered judgment ordering the forfeiture of the
Mustang.  See Tex. Code Crim.
Proc. Ann. arts. 59.01(4), 59.02(c) (Vernon 2006) (a lienholder’s
interest is not protected from forfeiture unless it is perfected); State v.
Southwind Auto Sales, 951 S.W.2d 849, 852 (Tex. App.—San Antonio 1997, no pet.)
(same).

            In denying Raye’s motion for new
trial, the court also referred to the following language in the parties’
contract: “Seller  .  .  .  hereby sells and agrees to convey unto  .  .  . 
Purchaser” [the car].  This according to the court provided further support for
its conclusion that Raye transferred ownership of the car to Harris when she
delivered it to him. 

            For purposes of Chapter 59, an “owner”
is defined as “a person who claims an equitable or legal ownership interest in
property.”  Tex. Code Crim. Proc. Ann.
art. 59.01(6) (Vernon 2006).  Under this statutory definition, there may be
more than one “owner” for an article of property.  See Arnold v. State,
793 S.W.2d 305, 308 (Tex. App.—Austin 1990, no writ).

            The parties’ dispute brings to light a
conflict between the provisions of the Certificate of Title Act (“the Title Act”)
and the Uniform Commercial Code (“the UCC”) regarding the transfer of title and
ownership in a motor vehicle sale.  This conflict has been discussed by several
of our sister courts.  See, e.g., Vibbert v. PAR, Inc., 224 S.W.3d 317, 321-24
(Tex. App.—El Paso 2006, no pet.); First Nat’l Bank of El Campo v. Buss,
143 S.W.3d 915, 919-24 (Tex. App.—Corpus Christi 2004, pet. denied); Arcadia
Fin., Ltd. v. Southwest-Tex Leasing Co., 78 S.W.3d 619, 623-24 (Tex.
App.—Austin 2002, pet. denied); see also Tyler Car & Truck Ctr. v.
Empire Fire & Marine Ins. Co., 2 S.W.3d 482, 485 (Tex. App.—Tyler 1999,
pet. denied).

            We begin with the Title Act.  Section
501.002(16) of the Title Act defines an “owner” as “a person, other than a
manufacturer, importer, distributor, or dealer, claiming title to or having a
right to operate under a lien a motor vehicle that has been subject to a first
sale.”[5]  Tex. Transp. Code Ann. § 501.002(16)
(Vernon 2007).  Under the Title Act, a motor vehicle may not be sold “unless
the owner designated in the certificate of title transfers the certificate of
title at the time of the sale.”  Id. § 501.071(a) (Vernon 2007).  A
purported sale which does not comply with this requirement “is void and title
may not pass until the requirements of this chapter are satisfied.”  Id. § 501.073 (Vernon 2007).

            Thus, it is the general rule that
ownership of a vehicle rests in the person(s) named in the certificate of
title.  However, “[t]he name on the certificate of title is not conclusive of
ownership.”  Vibbert, 224 S.W.3d at 321; accord Tyler Car & Truck
Ctr., 2 S.W.3d at 485.  And notwithstanding section 501.073, the sale of a
vehicle may still be valid as between the buyer and seller even if they do not
comply with the Title Act.  Phil Phillips Ford, Inc. v. St. Paul Fire &
Marine Ins. Co., 465 S.W.2d 933, 937 (Tex. 1971); First Nat’l Bank of El
Campo, 143 S.W.3d at 919; Tyler Car & Truck Ctr., 2 S.W.3d at
485.

            Evidence that a party is the
registered owner of a vehicle raises a presumption of ownership which is not
“evidence” and which “vanishes when positive evidence to the contrary is
introduced.”  Vibbert, 224 S.W.3d at 321; Tyler Car &
Truck Ctr., 2 S.W.3d at 485; see also Sudduth v. Commonwealth County Mut. Ins. Co., 454 S.W.2d 196, 198 (Tex. 1970) (“A true presumption is simply
a rule of law requiring the jury to reach a particular conclusion in the
absence of evidence to the contrary.  The presumption does disappear, therefore,
when evidence to the contrary is introduced, but the facts upon which the
presumption is based remain in evidence and will support any inferences that
may properly be drawn therefrom.”); accord Little v. Tex. Dep’t of Criminal
Justice, 177 S.W.3d 624, 631-32 (Tex. App.—Houston [1st Dist.] 2005, no
pet.); Jean v. Tyson-Jean, 118 S.W.3d 1, 6-7 (Tex. App.—Houston [14th
Dist.] 2003, pet. denied).

            By contrast, the UCC governs the sale
of “goods” generally, which are defined therein as “all things (including
specially manufactured goods) which are movable at the time of identification
to the contract for sale other than the money in which the price is to be paid,
investment securities (Chapter 8) and things in action.”  Tex. Bus. & Com. Code Ann. § 2.105(a)
(Vernon 1994).  Motor vehicles necessarily fit within this definition.  Assocs.
Discount Corp. v. Rattan Chevrolet, Inc., 462 S.W.2d 546, 549 (Tex. 1970); Vibbert, 224 S.W.3d at 322; First Nat’l Bank of El Campo, 143
S.W.3d at 920.

            Section 2.106(a) of the UCC provides:

            In this chapter unless the context
otherwise requires “contract” and “agreement” are limited to those relating to
the present or future sale of goods.  “Contract for sale” includes both a
present sale of goods and a contract to sell goods at a future time.  A “sale”
consists in the passing of title from the seller to the buyer for a price (Section
2.401).  A ”present sale” means a
sale which is accomplished by the making of the contract.

 

Tex. Bus. & Com. Code
Ann. § 2.106(a) (Vernon 1994).

            Section 2.401 provides in pertinent
part:

(a)  Title to goods cannot pass under a contract
for sale prior to their identification to the contract (Section 2.501), and
unless otherwise explicitly agreed the buyer acquires by their identification a
special property as limited by this title.  Any retention or reservation by the
seller of the title (property) in goods shipped or delivered to the buyer is
limited in effect to a reservation of a security interest.  Subject to these
provisions and to the provisions of the chapter on Secured Transactions
(Chapter 9), title to goods passes from the seller to the buyer in any manner
and on any conditions explicitly agreed on by the parties.

 

(b)  Unless otherwise explicitly agreed title
passes to the buyer at the time and place at which the seller completes his
performance with reference to the physical delivery of the goods, despite any
reservation of a security interest and even though a document of title is to be
delivered at a different time or place; and in particular and despite any
reservation of a security interest by the bill of lading

 

(1) if the contract requires or authorizes the
seller to send the goods to the buyer but does not require him to deliver them
at destination, title passes to the buyer at the time and place of shipment;
but

 

(2) if the contract requires delivery at
destination, title passes on tender there.

            

Id. § 2.401(a),
(b) (Vernon 1994).

            Finally, returning to the Title Act,
section 501.005 provides, “Chapters 1-9, Business & Commerce Code, control
over a conflicting provision of this chapter.”  Tex. Transp. Code Ann. § 501.005 (Vernon 2007).[6]

            In determining the respective rights
of parties to vehicle transactions in which the parties did not comply with the
terms of the Title Act, courts have uniformly held that the terms of the UCC
control over the terms of the Title Act under section 501.005.  See Vibbert,
224 S.W.3d at 324; First Nat’l Bank of El Campo, 143 S.W.3d at 923-24; Hudson
Buick, Pontiac, GMC Truck Co. v. Gooch, 7 S.W.3d 191, 198 (Tex. App.—Tyler 1999, pet. denied); but see Arcadia Fin., 78 S.W.3d at 624
(construing transaction in manner which rendered the issue of a conflict
between the statutes moot).

            We believe the approach taken in Arcadia
Financial dictates the outcome in this case.  Under section 2.401(b), title
passes at the time a seller delivers goods to a buyer “[u]nless otherwise
explicitly agreed.”  Tex. Bus. &
Com. Code Ann. § 2.401(b).  Here, Raye testified that the parties agreed
that title would not pass until Harris had made payment in full.  See Arcadia
Fin., 78 S.W.3d at 624 (“Under the agreement between Lone Star and
Advantage, no sale was completed until Advantage was paid in full.  Thus, under
the parties’ agreement, Lone Star had not yet acquired ownership of the
vehicles because it had not yet paid Advantage for them.”).

            Evidence that Harris had possession of
the Ford Mustang at the time of his arrest, that he had negotiated an agreement
to purchase it from Raye, and that he maintained liability insurance for it
constitutes some evidence that Harris has an ownership interest in the
Mustang.  However, it is no evidence that Raye does not also have “an equitable
or legal ownership interest” in the Mustang.  See Tex. Code Crim. Proc. Ann. art.
59.01(6); see also Arnold, 793 S.W.2d at 308 (“logic compels the
conclusion that the term ‘owner’ cannot be construed to require sole
ownership.”).

            We also examine the court’s reliance
on the peculiar language of the parties’ contract which states in pertinent
part, “Seller  .  .  .  hereby sells and agrees to convey unto  .  .  . 
Purchaser” [the car].  As we have already observed, Raye and Harris used a form
real estate sales contract which they modified to suit their purposes.  Texas courts have for decades construed virtually identical contract language as evidencing
an intent to make a future conveyance of real property rather than a present
conveyance.  See, e.g., U.S. Enters., Inc. v. Dauley, 535 S.W.2d 623,
624-25 (Tex. 1976) (identifying contract with identical language as “written
purchase contract”); Bowles v. Fickas, 140 Tex. 312, 167 S.W.2d 741, 742
(Tex. 1943) (“contract of sale”); Scott v. Vandor, 671 S.W.2d 79, 82
(Tex. App.—Houston [1st Dist.] 1984, writ ref’d n.r.e.) (“option contract” for
sale of real property); Ramsey v. Gordon, 567 S.W.2d 868, 868-69 (Tex. Civ.
App.—Waco 1978, writ ref’d n.r.e.) (contract to sell real property); Noblitt
v. Barker, 97 S.W.2d 1010, 1010-11, 1014 (Tex. Civ. App.—San Antonio 1936,
writ ref’d) (contract of sale).  

            At least one current Texas form book
continues to endorse this language as appropriate for a real estate sales
contract.  See 1 Frank A. St.
Claire, Texas Real Estate Guide § 3.200[2] (Matthew Bender & Co.
2007) (“Seller sells and agrees to convey, and Buyer
purchases and agrees to pay for, the tract of land”); but cf. 1 James W.
Adams, Jr., Texas Forms § 1:84, at 246-47 (West 2000) (“Seller agrees to
sell and convey to Purchaser and Purchaser agrees to purchase from Seller the
following:”); 1 Real Estate Forms Comm.,
State Bar of Tex., Texas Real Estate Forms Manual Form 8-1, at 8-21
(July 2006) (“Seller agrees to sell and convey the Property to Buyer, and Buyer
agrees to buy and pay Seller for the Property.”).

            The language endorsed by the State
Bar’s Real Estate Forms Committee is certainly more clear on the issue of
whether the seller is making a present conveyance or agreeing to a future
conveyance.  However, we cannot disregard decades of uniform interpretation
merely because a form has been updated.  Therefore, we hold as a matter of law
that the contract language at issue evidences
an intent and agreement to make a future sale of the Mustang rather than a
present sale.  Cf. Tex. Bus. & Com. Code Ann. § 2.106(a)
(“’Contract for sale’ includes both a present sale of goods and a contract to
sell goods at a future time.”).  Thus, this contract language is no evidence
that Raye does not have “an equitable or legal ownership interest” in the
Mustang.

            Having found that there is no evidence
in the record to support the court’s finding that Raye does not have “an
equitable or legal ownership interest” in the Mustang, we now determine whether
Raye established as a matter of law that she does have such an interest.  See
Dow Chem., 46 S.W.3d at 241; Dallas County Constable, 219 S.W.3d at
616; Sellers, 199 S.W.3d at 392; Lifshutz, 199 S.W.3d at 17-18; Hardy,
50 S.W.3d at 695; $18,800, 961 S.W.2d at 261.

            The State’s witnesses and Raye all
testified that she is the registered owner of the Mustang.  Raye testified that
Harris and she agreed that title for the car would not be delivered until he
had paid in full.  This evidence establishes as a matter of law that Raye held
legal title to the Mustang at the time it was seized.  See Arcadia Fin.,
78 S.W.3d at 624; Southwind Auto Sales, 951 S.W.2d at 852-53; see
also Cadle Co. v. Harvey, 46 S.W.3d 282, 286 (Tex. App.—Fort Worth 2001,
pet. denied) (real estate sales contracts typically “provide that upon making a
down payment, the buyer is entitled to immediate possession of the property,
with the remaining purchase price paid in installments over a period of time.  Legal
title, however, remains in the seller until the purchase price is paid in full.”)
(emphasis added).[7]

Knowledge of Narcotics Trafficking

            Raye also contends as part of her
first issue that she established as a matter of law that she did not know and
should not reasonably have known that Harris was involved in narcotics
trafficking.

            The only affirmative evidence in the
record on this subject is the virtually unanimous testimony of all witnesses
that Raye did not know that Harris was involved in narcotics trafficking. 
Presumably because the court found that Raye was not an “owner” of the Mustang,
the court did not make an express finding on the issue of Raye’s knowledge. 
Nevertheless, the court did state during the hearing on Raye’s request for
additional findings of fact and conclusions of law, “I don’t think there was
any evidence to support she was actually involved in any contraband trafficking
or anything like that.”

            The State suggests that, despite the
virtually unanimous testimony of all the witnesses on this subject, the trial
court was free to disbelieve this testimony and conclude that Raye did know or
reasonably should have known of Harris’s involvement in narcotics trafficking.

            The State is correct that credibility
determinations are left to the jury (or the court in a bench trial) which “may
choose to believe one witness and disbelieve another.”  City of Keller, 168 S.W.3d at 819.  “Jurors may disregard even uncontradicted and unimpeached
testimony from disinterested witnesses.”  Id. at 820.  However, “’[t]he
jury’s decisions regarding credibility must be reasonable.’  Jurors cannot
ignore undisputed testimony that is clear, positive, direct, otherwise
credible, free from contradictions and inconsistencies, and could have been
readily controverted.”  Id. (quoting Bentley v. Bunton, 94 S.W.3d
561, 599 (Tex. 2002)).

            Here, the testimony of all the
witnesses was “undisputed . . . clear, positive, [and] direct” on the issue of
whether Raye knew or reasonably should have known of Harris’s involvement in
narcotics trafficking.  See id.  Thus, the trial court was not free to
disbelieve this testimony.  Id.

            We are well aware of the established
principle that this Court may not interfere with the credibility determinations
of a trial court.  See id. at 819 (“Reviewing courts cannot impose their
own opinions [on credibility] to the contrary.”).  However, in view of the
court’s “oral finding” and the undisputed testimony on the issue of Raye’s lack
of knowledge, it would not be “reasonable” for us to conclude that the trial
court chose to disbelieve this evidence.  See id. at 820; but cf. In
re Doe 10, 78 S.W.3d 338, 340 n.2 (Tex. 2002) (“Oral comments from the
bench are not written findings of fact.”); In re W.E.R., 669 S.W.2d 716,
716 (Tex. 1984) (per curiam) (appellate court may not consider trial judge’s
oral comments as substitute for written findings); In re E.A.S., 123
S.W.3d 565, 569 (Tex. App.—El Paso 2003, pet. denied) (“Oral statements by the
judge on the record will not be accepted as findings of fact.”).

            Therefore, we hold that Raye
established as a matter of law that she did not know and should not reasonably
have known that Harris was involved in narcotics trafficking.  Accordingly, we
sustain her first issue.

Breach of Contract

            Raye contends in her second issue that
she established as a matter of law her cross-claim that Harris breached their
contract and that she is entitled to a money judgment for the amount he still
owes on the contract.

            The contract provides that Raye may
have as possible remedies for a breach either: (1) the right to retain the
monies paid “as liquidated damages for the breach of this contract” or (2) the
right to “enforce specific performance of this contract.”

            The court stated in its written
findings of fact and conclusions of law, “[T]he Court finds that the vehicle
was sold to Harris and that the seller, Ms. Raye failed to perfect her lien. 
The vehicle is forfeited and Ms. Raye is free to pursue her legal remedy,
futile though it may be.”  It appears from this that the court concluded Raye
would have to file a separate suit to enforce her contractual rights.

            However, we have already rejected the
trial court’s interpretation of the contract.  Rather, the evidence establishes
as a matter of law that Raye and Harris had a contract for the future sale of
the Mustang conditioned on Harris making payment in full.  The evidence is
undisputed that Harris failed to make payment in full and still owes $4,500 on
the contract.  Thus, Raye established as a matter of law that Harris breached
their contract.  See Runge v. Raytheon E-Sys., Inc., 57 S.W.3d 562, 565
(Tex. App.—Waco 2001, no pet.) (listing elements for breach of contract).

            However, Raye seeks a remedy not
provided by the contract (namely, Harris’s payment of the remaining amount owed
while Raye retains possession of the car).  Rather, the contract provides that,
in the event of a breach by Harris, Raye can (1) retain ownership of the car
and retain the monies paid “as liquidated damages for the breach of this
contract” or (2) “enforce specific performance of this contract.”  The remedy
of “specific performance” would require Raye to transfer ownership of the car
to Harris in exchange for payment of the remaining $4,500 owed.  See
Brantley v. Etter, 662 S.W.2d 752, 757 (Tex. App.—San Antonio 1983), writ
ref’d n.r.e., 677 S.W.2d 503 (Tex. 1984) (per curiam).

            Because Raye seeks a remedy not
authorized by the contract, we overrule her second issue.

Conclusion

We reverse the judgment and render judgment in
favor of Raye for possession of the Ford Mustang.

 

FELIPE REYNA

Justice

 

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray dissenting)

Reversed and rendered

Opinion delivered and
filed July 18, 2007

[CV06]









[1]
              The parties’ contract is
actually a form real estate sales contract which was modified to constitute a
contract for the sale of an automobile.  In the margin of the contract is a
pre-printed notation identifying the document as a “Contract of Sale and
Receipt of Earnest Money (with Title Advice).”

 





[2]
              However, Deputy Stan Farmer
testified that Harris carried the insurance for the Mustang, and a liability
insurance card was admitted in evidence indicating that Harris did have
coverage on the car.  Raye likewise testified that Harris maintained liability
insurance for the car.





[3]
              Harris was arrested in Arlington for a violation of section 481.115 of the Heath and Safety Code (possession of
controlled substance listed in Penalty Group 1) and in Navarro County for a violation of section 481.112 of that code (possession with intent to deliver a
controlled substance listed in Penalty Group 1).  See Tex. Health & Safety Code Ann. §§ 481.112,
481.115 (Vernon 2003).

 





[4]
              Article 59.02 also provides an
innocent-owner defense for a person who acquires ownership after the act or
omission giving rise to the forfeiture but before the seizure of the property. 
See Tex. Code Crim. Proc. Ann.
art. 59.02(c)(2) (Vernon 2006).





[5]
              By comparison, section
502.001(16) of the Title Act defines an “owner” as “a person who: (A) holds the legal title of a vehicle; (B) has
the legal right of possession of a vehicle; or (C) has the legal right of
control of a vehicle.”  Tex. Transp.
Code Ann. § 502.001(16) (Vernon 2007).





[6]
              The Legislature enacted the
statutory predecessor to section 501.005 in 1971 in response to a 1970 Supreme
Court holding that the terms of the Title Act controlled over the terms of the
UCC.  See Hudson Buick, Pontiac, GMC Truck Co. v. Gooch, 7 S.W.3d 191,
198 (Tex. App.—Tyler 1999, pet. denied).





[7]
              We cite Cadle Co. v. Harvey
because, as stated above, Raye’s contract with Harris was a real estate sales
contract which had been converted to a contract for the sale of the Mustang.