**L. Katherine BUCHER et al., Appellants,**

**v.**

**EMPLOYERS CASUALTY COMPANY,**
**Appellee.**

No. 16770.

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 2, 1966.

Bagby & Ross, and Albert C. Ross, Arlington, for appellants.

Cantey, Hanger, Gooch, Cravens & Scarborough, and John McBryde, Fort Worth, for appellee.

## OPINION

LANGDON, Justice.

This appeal is from summary judgments granted the defendant in a suit filed against it to recover for fire loss in which suit all plaintiffs were joined. The primary question to be resolved is whether or not a change in ownership of the insured property occurred within the meaning of the insurance policy in question, when the plaintiffs (sellers) entered into a contract of sale and the purchasers were thereafter in possession of the property and had partly performed under the contract by making the down payment and at least one monthly payment.

The policy of insurance issued by defendant on March 20, 1964, covered an apartment house located at 505 St. Louis Street, Fort Worth, Texas, and contains the provision that "Unless otherwise provided in writing added hereto, this Company shall not be liable for loss occurring * * * (d) following a change in ownership of the insured property; * * *."

The trial court concluded that a change of ownership did occur, within the meaning of the above quoted provision prior to loss, and thus the insurance company was relieved of liability.

The appellants contend the court erred in so holding because the contract in question was executory in nature and did not pass either legal or equitable title so as to constitute a "change in ownership".

We affirm.

The following facts are undisputed: The property covered by the policy is identical to that covered by the contract of sale.

At the time the policy in question was issued and became effective the full legal and equitable ownership of the property was vested one-half in plaintiff L. Katherine Bucher and one-half in her stepchildren, the other plaintiffs. Plaintiffs continued to hold such legal and equitable ownership until the contract of sale was entered into on May 1, 1965.

The contract of sale affecting the property was entered into by and between Mrs. Bucher and her stepchildren as "seller," and Medardo and Linda Villarreal as "purchasers". Charles H. Bucher, now deceased, in signing the contract of sale, was acting for himself and as agent and attorney in fact for his brothers and sisters. Thus, all plaintiffs in this cause were parties to and were bound by the sales contract. Prior to the execution of the contract of sale the Villarreals had rented and occupied the premises involved at $60.00 per month.

The contract of sale executed by the parties provided for a down payment of $60.00 and monthly payments of $60.00 each to commence on June 1, 1965, and to continue until the purchase price of $6,000.00 was fully paid. The unpaid balance of the purchase price was to be evidenced by a promissory note bearing interest at 6% per annum. The purchasers were to pay all future taxes and were to secure an insurance policy with loss payable clause in favor of appellants. In case of default the appellants at their option could declare the full amount of the note due, cancel the agreement and apply all past payments as liquidated damages for rent. It is undisputed that the promissory note was never executed and delivered, the policy of insurance was never obtained and that the appellants did not prior to the fire declare the full amount due and cancel the agreement under the default provisions of the contract. According to deposition testimony of Mrs. Bucher the property belonged to the Villarreals for all purposes except that they owed money on it. The Villarreals "got the rent and paid the utilities". They were in full possession of the premises and had made repairs. She had not declared any default under the contract because Villarreal "was making his payment except for the insurance" and that as far as she was concerned the contract was still in force and effect when the fire occurred.

The Texas courts have uniformly held that a contract of sale such as is here involved does effect a change of ownership. Under such a contract the purchaser becomes full beneficial or equitable owner of the property. All that remains in the seller is a bare legal title, more in the nature of a security title to guarantee payment of the purchase price than anything else. The rule is summed up in 58 Tex.Jur.2d 497, 499, § 267, under the heading "Vendor and Purchaser," as follows: "The purchaser, however, acquires an equitable title or interest in the property from the date of the contract, or in any event from the time when he enters into possession, until his interest ripens into a legal title by an absolute conveyance or, where the transaction consists in a conveyance and a reserved lien, by payment of the price or performance of the contract. The passing of the equitable title is a matter of law and not a matter of stipulation in a contract."

The paramount title or ownership under a contract of this kind is in the purchaser, or, as stated in § 268, of the same text at page 500: "As between the purchaser and third persons, the paramount title is in the

purchaser, notwithstanding the retention of a vendor's lien."

It is clear from the preceding quotations and other controlling authorities that the legal effect to be given to a long term contract of sale is essentially the same as that to be given to a deed with retained vendor's lien, and the rights and obligations of the parties are substantially the same. Peters v. Clements, 46 Tex. 114.

The courts have recognized the rule that the equitable title passed when the contract was made or in any event from the date the purchaser takes possession and that "the loss must be borne by the purchaser." Leeson v. City of Houston, 243 S.W. 485 (Tex. Com. of App., 1922); Rives v. James, 3 S.W.2d 932 (San Antonio Civ.App., 1928, dismissed).

An article discussing the legal effect of a contract of sale is found in 11 S.W.L.J., 384, 387. It notes a 1956 Court of Civil Appeals decision wherein the following holding was made: "Under an executory contract to purchase land, the purchaser acquires an equitable title to the realty with the exclusive right to sue for damages to the freehold."

After analyzing other decisions the author concludes: "It would appear that the principal case is but an extension of the earlier decisions which held that equitable title passes immediately upon entering into a land contract." The author recognizes the distinction which has been made in Texas decisions between equitable right and equitable title, and concludes that the distinction is meaningless, except in one respect which is immaterial here.

Directly in point on the case at bar is the holding of the Kentucky Court of Appeals in Cottingham v. Fireman's Fund Ins. Co., 90 Ky. 439, 14 S.W. 417, 9 L.R.A. 627 (1890), where the court was considering existence vel non of coverage following a contract of sale between the insured and third party under a policy which said that no coverage would exist if the property

was sold or transferred. In the course of holding that coverage did not exist, the court said: "But where, as in this state, the beneficial interest is passed to the vendee of the equitable title, the contract of insurance is vacated by such sale. The vendee in such case assumes all risk of loss or destruction of the property. Such risk is no longer with the vendor. Hence, the insurer's contract of indemnity against the destruction or damage of the insured property is at an end."

For other Texas cases involving the legal effect of a sales contract similar to the one here involved we cite: Ingram v. Central Bitulithic Co., 51 S.W.2d 1067 (Waco Civ.App., 1932, refused), which quotes with approval the holding in Leeson v. City of Houston, supra; City of Garland v. Wentzel, 294 S.W.2d 145 (Dallas Civ.App., 1956, ref., n. r. e.). The latter case involved a forfeiture clause as did the case of Shambaugh v. Moore, 54 S.W. 2d 211 (Beaumont Civ.App., 1932, refused). In the Shambaugh case as here the forefeiture clause was optional. See also Dimmitt Elevator Co. v. Carter, 70 S.W.2d 615 (Amarillo Civ.App., 1934, no writ. hist.); Taylor v. Herrin, 127 S.W.2d 945 (Galveston Civ.App., 1939, no writ. hist.), and cases cited therein; Fire Ass'n of Philadelphia v. Perry, 185 S.W. 374 (Galveston Civ.App., 1916, dismissed); Whitehead v. Hartford Fire Ins. Co., 278 S.W. 959 (Amarillo Civ.App., 1926, no writ. hist.); Rio Grande Nat. L. I. Co. v. Hardware Dealers Mut. F. I. Co., 209 S.W.2d 654 (Amarillo Civ.App., 1948, ref., n. r. e.).

■ Under the authorities cited we are of the opinion that a change of the ownership did occur within the meaning of the policy provisions and that no coverage existed on the date of the fire.

The appellants rely primarily upon the holding in Currie v. Burgess, 132 Tex. 104, 120 S.W.2d 788 (Galveston Civ.App., 1938 (123 S.W.2d 440)), judgment of the trial court was reversed and rendered by the Court of Civil Appeals in conformity with

answers to questions certified; Walters v. Century Lloyds Insurance Company, 154 Tex. 30, 273 S.W.2d 66 (1954); Tashnek v. Hefner, 282 S.W.2d 298 (Galveston Civ. App., 1955, ref., n. r. e.); Campbell v. Chaney, 125 Tex. 201, 82 S.W.2d 638 (1935), and other authorities of similar import which in our opinion have no application to the facts of this case.

■ Texas courts recognize that a contract provision which voids the coverage in the event of a change in ownership is a valid and enforceable one, and relieves the insurance company of liability if a change of ownership occurs. Continental Ins. Co. v. Michaels, 13 S.W.2d 465 (Texarkana Civ.App., 1929, no writ hist.); Lowe v. Michigan Fire & Marine Ins. Co., 236 S.W.2d 168 (Beaumont Civ.App., 1950, refused).

■ Under the facts of this case the appellants did not exercise the option to rescind under the default provisions of the contract, either because of the failure of purchasers to deliver the note or to obtain the policy of insurance and "Recission is not the automatic result of default by the vendee * * *." 59 Tex.Jur.2d 17, 18, § 468. In the same text see also § 471 at pages 21–22; § 532, pages 79–81; § 554 at page 102; § 555 at page 103; and § 560 at pages 106–107 and cases cited thereunder. In the light of the authorities we find no basis for a claim of forfeiture.

■ The testimony of Mrs. Bucher makes it clear that the parties had simply ignored the requirement that a note be delivered and had therefore waived it. It is not required or essential that an indebtedness under a contract of sale be evidenced by a promissory note. The language of the contract itself discloses the indebtedness, and is sufficient evidence thereof to enable the sellers to enforce it. In Ingram v. Central Bitulithic Co., supra, it appears the contract was the sole evidence of the purchase money indebtedness.

In summary we have concluded that the sales contract was in full force and effect when the fire occurred. That such contract, when considered together with part performance thereunder and possession of the property brought about a change of ownership within the meaning of the policy so as to relieve the insurance company from any liability for the loss which occurred following that change of ownership. The change of ownership was real and not merely nominal or fictitious. Once equitable title vested, as it did, all risk of loss was shifted from plaintiffs to the Villarreals. All points of error are overruled. The judgment of the trial court is in all things affirmed.