NO. 07-05-0444-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



FEBRUARY 14, 2006


______________________________



ADAM GRANADO, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 69TH DISTRICT COURT OF MOORE COUNTY;



NO. 3696; HONORABLE RON ENNS, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

ON ABATEMENT AND REMAND
 

 Appellant Adam Granado has appealed his conviction and sentence following his
conviction for money laundering and assessment of punishment that includes a five year 
sentence in the Texas Department of Criminal Justice - Institutional Division, which was
probated for 10 years. A copy of a notice of appeal was filed with this Court on December
8, 2005. The clerk's record was filed on January 3, 2006 and the reporter's record has not
been filed. David Martinez was trial counsel and no appellate counsel has been appointed. 


 The court reporter's record was due to be filed on January 2, 2006. An extension
motion was filed on January 11, 2006 indicating that appellant had not submitted a request
for preparation of the record. The clerk of this court sent a letter, dated January 11, 2006,
to the court reporter and to appellant notifying him that the record had not been filed and
he should certify to this court that he requested the reporter's record by January 23, 2006. 
That letter has been returned to this court marked "return to sender, moved left no address,
unable to forward." 

 The trial court has the responsibility for appointing counsel to represent indigent
defendants, as well as the authority to relieve or replace counsel. Tex. Code Crim. Proc.
Ann. arts. 1.051(d), 26.04(c) (Vernon 2005 & Supp. 2005). See also Enriquez v. State, 999
S.W.2d 906, 907 (Tex.App.-Waco 1999, no pet.). Accordingly, we now abate this appeal
and remand the cause to the trial court for further proceedings. Tex. R. App. P. 43.6. 

 Upon remand the trial court shall immediately conduct such hearings as may be
necessary to determine the following, causing proper notice of any such hearing to be
given: 

 1. whether appellant still desires to prosecute this appeal and is indigent
and entitled to appointed counsel. 


 Should it be determined that appellant desires to continue the appeal, then the trial
court shall also take such measures as may be necessary to assure appellant effective
assistance of counsel, which measures may include the appointment of new counsel. If
new counsel is appointed, the name, address, telephone number, and state bar number
of counsel shall be included in the order appointing new counsel. 

 The trial court shall execute findings of fact, conclusions of law, and such orders as
the court may enter regarding the aforementioned issues and cause its findings and
conclusions to be included in a supplemental clerk's record. A supplemental reporter's
record of any hearing shall also be included in the appellate record. The trial court shall
file the supplemental clerk's record and the supplemental reporter's record with the Clerk
of this Court by March 14, 2006. 

 It is so ordered. 

 Per Curiam 

Do not publish.





ked="false" Priority="39" Name="toc 8"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO.
07-08-0469-CV

 

IN THE COURT OF APPEALS

 

FOR THE SEVENTH DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL C

 

JULY 19, 2010

 

______________________________

 

 

GARY WAYNE NORTON, APPELLANT

 

V.

 

TAMMY MARIE NORTON, APPELLEE

 

 

_________________________________

 

FROM COUNTY COURT AT
LAW NO. 2 OF RANDALL COUNTY;

 

NO. 5632-L-2 ;
HONORABLE RONNIE WALKER, JUDGE

 

_______________________________

 

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

MEMORANDUM OPINION

            A First Amended Final Decree of Divorce was entered by
the trial court dissolving the marriage of Appellant, Gary Wayne Norton, and
Appellee, Tammy Marie Norton, and dividing their marital property.  By two issues, Gary complains the trial court
abused its discretion in finding that (1) he did not adequately trace his
separate property into funds from which he discharged a debt on the community
property marital residence and (2) the discharged debt was an unsecured debt
for purposes of determining whether his separate estate was entitled to an
economic contribution claim from the community estate under section 3.402 of
the Texas Family Code.  We reverse the
judgment of the trial court, in part, reform the judgment, and affirm the trial
court's judgment as reformed.  Tex. R. App. P. 43.2(c).

Background Facts

            Gary and Tammy were married on
May 13, 1994.  In December 2005, they
purchased a home in Amarillo by paying $5,000 down on the purchase price of
$153,000, with the owner, Willa J. Thomas, carrying the balance of the purchase
price under the terms of a contract for deed. 
In May 2007, Gary and Tammy separated and on May 6th Tammy filed for
divorce.  Gary remained in the home and
continued to make payments on the contract for deed.  In June 2007, Gary sold a farm he had
inherited from his mother for a net proceed of $246,008.12.  On July 3, 2007, he deposited the proceeds from
the sale into a newly opened account with Herring Bank, bearing account number
5860709.  On December 18, 2007, via a
check drawn on that account, he paid off the balance of the purchase price of
the marital residence and received a warranty deed from the seller.  

            Thereafter,
Gary filed a counter-petition seeking reimbursement and economic contribution
for funds expended from his separate estate for the benefit of the marital
estate arising from the payment of the balance due on the community property
marital residence.  Tex.
Fam. Code Ann. § 3.402(a) (Vernon Supp. 2009).[1]  Gary maintained that the full payment was
from his separate property, whereas Tammy contended that the account had lost
its separate property character due to commingling of community funds.  At the final hearing, Gary and Tammy
testified and offered various exhibits in support of their respective positions.  At the conclusion of the hearing, the trial
court found that (1) Gary failed to trace, by clear and convincing evidence, his
separate property funds from the Herring Bank account to the payoff on the
marital residence and (2) even if sufficiently traced, the economic
contribution statute did not apply because the contract for deed was not a debt
secured by a lien as contemplated by section 3.402(a)(3)(B)
of the Texas Family Code.  

            Other
issues regarding the division of the community estate having been resolved, the
trial court awarded each party an undivided one-half interest in the marital
residence.  In addition, the trial court granted
Gary the right to purchase Tammy's interest in the property by paying her $79,463.50
(one-half of the equity value of the marital residence), and failing such a
buyout, the property would be sold and the proceeds divided equally.

            Per Gary's
request, the trial court filed Findings of Fact and Conclusions of Law.[2]  As relevant to Gary's complaints, the trial
court made the following findings:

4. The value of the property at
6701 Calumet, Amarillo, Texas is $158,927.

5. 
The debt described in the Contract
for Deed in connection with the purchase of the property at 6701 Calumet is
unsecured.

* *
*

7. 
Pertaining to husband's reimbursement claim in connection
with the subject debt pertaining to the 6701 Calumet property, husband did not
overcome the community property presumption pertaining to the property used to
pay the unsecured debt.

(a) Since husband seeks the
reimbursement of his separate estate pertaining to the payment of the subject
debt in connection with the 6701 Calumet property, husband must prove by clear
and convincing evidence that separate property was used to pay such debt.

(b) Husband did not trace and
clearly identify that sum of $136,917.31, or a specific part thereof was
separate property.

(c) The Herring Bank account from
which the check in the sum of $136,917.31 was written was co-mingled.

(d) No bank
records, or other such documentation was offered or admitted into evidence
in connection with the status of the subject account at the Herring Bank after
the date of inception (7-3-07), to the date that the check in the sum of
$136,917.31 was signed (12-18-07).

(e)
The court is unable to determine the specific application of the payment of the
$136,917.31 debt; e.g., how much went to principal, interest, taxes, repairs,
closing costs, or any other aspects of such debt.

 

Standard of Review-Findings of Fact

Findings of fact entered in a case
tried to the bench have the same force and dignity as a jury=s
verdict upon questions.  Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex.
1991); City of Clute v. City of Lake Jackson, 559 S.W.2d 391, 395
(Tex.Civ.App.--Houston [14th Dist.] 1977, writ ref=d
n.r.e.).  However, conclusions of
law are always reviewable de novo and the findings are not conclusive when a
complete statement of facts appears in the record if the contrary is
established as a matter of law or if there is no evidence to support the
findings.  Middleton
v. Kawasaki Steel Corp., 687 S.W.2d 42, 44 (Tex.App.BHouston [14th Dist.] 1985), writ
ref=d n.r.e.,
699 S.W.2d 199 (Tex. 1985) (per curiam). 


In our analysis, we will review
Gary's contentions in a logical rather than sequential order, beginning with
his second issue.

I.          Finding
of Fact 5 - Unsecured Status of Debt

            In 2005, when Gary
and Tammy purchased the marital residence located at 6701 Calumet, they entered
into a Contract for Deed and paid $5,000 down on the purchase price of $153,000.  The owner, Willa J. Thomas, carried the
balance payable in monthly installments of $1,708.57 for ten years.  The monthly payment included $278.33 for
taxes and $107.49 for insurance.  The
contract provided that a fully executed Warranty Deed would be issued upon final
payment of the entire amount due.  The
economic contribution statute in effect at the time of the filing of the
petition for divorce imposed an equitable lien on property of a marital estate
for economic contribution in that property by another marital estate arising
from a reduction of the principal amount of a debt "secured by a lien"
on that property.  See Act of May 29, 2009, 81st Leg., R,S., ch. 768, § 3, 2009 Tex. Gen. Laws 1950, 1951 (now titled
"Claim for Reimbursement; Offsets").

            Regarding
Gary's claim for economic contribution, the trial court ruled as follows:

Clearly, this house was not done
properly.  The Court noticed right off,
as the attorneys are well aware, that there
is no lien on this house, which is highly unusual.  The house was purchased, and even though the
seller, I guess, in effect financed a portion of it -- although there is
nothing in these instruments that show the lien in connection with that, just a
reference to it in the so-called contract for deed -- that because of that, the
specific statutory provision in the Texas Family Code, Section 3.401, claims
for economic contribution and reimbursement, and 3.402, the requirements stated
therein are not met.  Specifically,
statutory economic contribution only applies to debt, and only applies to debt
that is secured by a lien.  There is no lien in these papers, so this is
unsecured debt.

(Emphasis added).

            In support of
his contention that there was a lien on the property supporting his claim for
economic contribution, Gary relies on section 24.002(8) of the Texas Business
and Commerce Code Annotated (Vernon 2007),[3]
and section 5.081 of the Texas Property Code Annotated (Vernon Supp. 2009).[4]
 He argues that the Contract for Deed
entered into for the purchase of the marital residence is an instrument for
security for debts on real property akin to a lien.  Tammy's position is that the Contract for
Deed accomplished nothing more than an "equitable right" to
performance under the contract, and no lien was created.  We agree with Gary. 

            A contract for
deed is an agreement by a seller to deliver a deed to property once certain
conditions have been met.  Graves v. Diehl, 958 S.W.2d 468, 470
(Tex.App.--Houston [14th Dist.] 1997, no pet.). 
The seller is not obliged to deliver legal title to the property until
the purchaser pays the purchase price in full. 
Id. at 471.  The legal effect of the contract is the same
as that of a deed with a retained vendor's lien.  Ward v.
Malone, 115 S.W.3d 267, 271 (Tex.App.--Corpus Christi 2003, pet. denied),
citing Bucher v. Employers Casualty Co.,
409 S.W.2d 583, 584 (Tex.Civ.App.--Fort Worth 1966, no writ) (noting that under
a contract for sale, the purchaser becomes full beneficial or equitable owner
and the seller holds a bare legal title, more in the nature of a security title
to guarantee payment of the purchase price . . . .")  Paramount title is in the purchaser and the
seller retains a vendor's lien.  Bucher, 409 S.W.2d at 584-85.   

            Notwithstanding
Finding of Fact 5, the record in the underlying case establishes that the
seller, Ms. Thomas, retained a vendor's lien in the marital property as a
matter of law.  Therefore, the trial
court abused its discretion in finding that the debt described in the contract
for deed executed in connection with the purchase of the property at 6701
Calumet was an unsecured debt to which the economic contribution statute did
not apply.  We sustain issue two.

II.         Finding
of Fact 7 - Tracing

            We now consider
Garys first issue.  It is undisputed
that Gary's separate property included a farm he inherited from his mother in
2001.  Evidence in the form of a
settlement statement dated June 29, 2007, established that he sold the farm in
June 2007 for a net proceed of $246,008.12. 
At the final divorce hearing, Gary provided documentation that he opened
a new account, bearing number 5860709 at Herring Bank on July 3, 2007, with a
deposit of that exact sum and a designation of "SINGLE PARTY ACCOUNT WITH
'P.O.D' (Payable on Death)."  Also
admitted into evidence was a copy of a check from the Herring Bank account
dated December 18, 2007, in the amount of $136,917.31 made out to Willa J.
Thomas as a payoff on the balance of the purchase price of the marital
residence located at 6701 Calumet.  Those
two facts alone establish prima facie evidence that the payoff was made, at
least in part, from Gary's separate property
funds.  The question then becomes, based
on Tammy's allegation of commingling of community funds, how much, if any, of
that payoff did come from Gary's separate property funds?  

With
respect to that issue, Tammy does not dispute the separate property nature of
the proceeds from the sale of the farm that Gary inherited from his mother or
the tracing of those funds into the Herring Bank.  Instead, she contends that the presumption of
community property and the depositing of community property funds into that
account require the trial court to conclude that those sums were community
property because Gary failed to adequately trace his separate property.  

 In that regard, Gary testified that
approximately $6,000 in community funds from employment and from payment on a
note owed to him were deposited into the Herring Bank account.  While Tammy does not claim additional
deposits, she does contend that the separate property character of the payoff
was not sufficiently traced because Gary did not provide supporting
documentation of other transactions from the Herring Bank account from the date
of inception to the date of payment of the debt.  She concludes that the commingled funds defy
resegregation and identification. 

            A party may bring a claim for
reimbursement of payments made by one spouse's separate estate to the community
estate.  Alsenz v. Alsenz, 101 S.W.3d 648, 651-52 (Tex.App.--Houston [1st
Dist.] 2003, pet. denied).  The party
seeking reimbursement has the burden of pleading and proving that the
expenditures were made and that they are reimbursable.  Vallone
v. Vallone, 644 S.W.2d 455, 459 (Tex. 1982).  

 
There is a statutory presumption that all property possessed by either
spouse upon dissolution of the marriage is community property.  See Tex.
Fam. Code Ann. § 3.003(a) (Vernon 2006). 
See also Tarver
v. Tarver, 394 S.W.2d 780, 783
(Tex. 1965).  The degree of proof
necessary to overcome the presumption is clear and convincing evidence.  Tex. Fam. Code Ann. §
3.003(b) (Vernon 2006).  Clear and
convincing evidence is that measure or degree of proof which will produce in
the mind of the trier of fact a firm belief or conviction as to the truth of
the allegations sought to be established. 
Id. at §
101.007.  The proof must weigh
more heavily than merely the greater weight of the credible evidence, but the
evidence need not be unequivocal or undisputed. 
Boyd v. Boyd,
131 S.W.3d 605, 611 (Tex.App.--Fort Worth 2004, no pet.).  

            To overcome
the community presumption, the party asserting separate ownership must clearly
trace the original separate property into the particular assets on hand during
the marriage.  Cockerham v. Cockerham,
527 S.W.2d 162, 167 (Tex. 1975).  Tracing involves establishing the
separate origin of the property through evidence showing the time and means by
which the spouse originally obtained possession of the property.  Moroch v. Collins, 174 S.W.3d 849, 856-57
(Tex.App.--Dallas 2005, pet. denied).  The burden of tracing is a difficult, but not
impossible, burden to sustain.  Boyd, 131 S.W.3d at 612.   Mere
testimony that property was purchased with separate funds, without any tracing
of the funds, is insufficient to rebut the community presumption.  Id.  The burden is not discharged and the
statutory presumption prevails if the evidence shows that the separate and
community property defy resegregation and identification.  Tarver,
394 S.W.2d at 783. 
However, when separate property is traced, the statutory presumption is
dispelled.  Estate of Hanau v. Hanau, 730 S.W.2d
663, 667 (Tex. 1987).  Any doubt
as to the character of property should be resolved in favor of the community
estate.  Boyd, 131 S.W.3d at 612.  When separate and community property are
commingled in a single bank account, we presume the community funds are drawn
out first, before separate funds are withdrawn, and where there are sufficient
funds at all times to cover the separate property balance in the account at the
time of the divorce, we presume the balance remains separate property.  Smith
v. Smith, 22 S.W.3d 140, 146 (Tex.App.--Houston  [14th Dist.] 2000, no pet.).  

            Gary
established, by testimony and documentation, the separate origin of the funds
deposited in the Herring Bank account. 
He also established that the sum of $136,917.31, from that account, was used
to discharge the debt on the community residence located at 6701 Calumet.  The fact that $6,000 of community funds were
deposited into that account does not defy resegregation and identification.  Providing the community with the full benefit
of the presumption that community funds were withdrawn as a part of that
payoff, we conclude Gary provided clear and convincing evidence that not less
than $130,917.31 ($136,917.31 - $6,000.00) was from his separate property
funds.  See Smith, 22 S.W.3d at 146 (presuming community funds are drawn
out first).  Thus, the trial court abused
its discretion in finding that Gary did not trace his separate property funds
by clear and convincing evidence.  Issue one
is sustained.




 

III.        Calculation
of Appellant's Economic Contribution Under § 3.403(b)
of the       Texas Family Code[5]

 

            Tab 9 in
the index of Gary's brief contains a calculation of his economic contribution
per the formula provided in section 3.403(b) of the Texas Family Code.  Gary calculates his separate property
contribution to be $136,917.31; however, as set forth above, that figure is overstated
by the sum of $6,000.  Accordingly, we
deduct $6,000 from $136,917.31 and conclude that Gary's claim for economic
contribution should be limited to $130,917.31. 


Conclusion

            In that
portion of the decree dealing with the sale of the marital residence, the trial
court granted Gary the right to purchase Tammy's interest for one-half of the community's
equity interest in the property, or $79,463.50 ((fair market value minus Gary's
economic contribution claim) ÷ 2 or ($158,927 - $ 0) ÷ 2 = $79,463.50).  Because the trial court erroneously concluded
that the debt in question was not secured by the property, it undervalued the
amount of Gary's economic contribution claim, causing it to miscalculate the
buy-out price.  Therefore, the trial
court's First Amended Final Decree of Divorce is reversed, in part, and
reformed to provide that Gary shall have the right to purchase Tammy's interest
in the community residence for $14,004.85 ((fair market value minus Gary's
economic contribution claim) ÷ 2 or ($158,927 - $130,917.31) ÷ 2 = $14,004.85),  and in all other respects the judgment is affirmed.

 

                                                                                    Patrick
A. Pirtle

      Justice











[1]Economic contribution is the dollar amount expended on
behalf of a marital estate. See Act
of May 22, 2001, 77th Leg., R.S., ch. 838, § 2, Tex.
Gen. Laws 1679, 1680-81, amended by
Act of May 29, 2009, 81st Leg., R,S., ch. 768, § 3,
2009 Tex. Gen. Laws 1950, 1951 (now titled "Claim for Reimbursement;
Offsets."  Sections 3.401, 3.403,
3.406(c), 3.407, and 3.408 of the Family Code have been repealed.  See
Act of May 29, 2009, 81st Leg., R.S., ch. 768, §
11(3), 2009 Tex. Gen. Laws 1950, 1953. 
However, we apply the statutes in effect when Tammy filed for divorce in
May 2007. 





[2]Tex. R. Civ. P. 296.





[3]"Lien" means a charge against or an interest
in property to secure payment of a debt or performance of an obligation, and
includes a security interest created by agreement, a judicial lien obtained by
legal or equitable process or proceedings, a common-law lien, or a statutory
lien.  

 





[4]Section 5.081 describes how a purchaser may convert a
property interest under an executory contract into recorded, legal title.





[5]A claim for economic contribution is determined by the
formula set forth in section 3.403 of the Family Code, since repealed by Act of
May 29, 2009, 81st Leg., R.S., ch. 768, § 11(3), 2009
Tex. Gen. Laws 1950, 1953.