NO. 07-08-0469-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JULY 19, 2010

_____


GARY WAYNE NORTON, APPELLANT

V.

TAMMY MARIE NORTON, APPELLEE


_____

FROM COUNTY COURT AT LAW NO. 2 OF RANDALL COUNTY;

NO. 5632-L-2 ; HONORABLE RONNIE WALKER, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

A First Amended Final Decree of Divorce was entered by the trial court dissolving the marriage of Appellant, Gary Wayne Norton, and Appellee, Tammy Marie Norton, and dividing their marital property. By two issues, Gary complains the trial court abused its discretion in finding that (1) he did not adequately trace his separate property into funds from which he discharged a debt on the community property marital residence

and (2) the discharged debt was an unsecured debt for purposes of determining whether his separate estate was entitled to an economic contribution claim from the community estate under section 3.402 of the Texas Family Code. We reverse the judgment of the trial court, in part, reform the judgment, and affirm the trial court's judgment as reformed. Tex. R. App. P. 43.2(c).

### Background Facts

Gary and Tammy were married on May 13, 1994. In December 2005, they purchased a home in Amarillo by paying $5,000 down on the purchase price of $153,000, with the owner, Willa J. Thomas, carrying the balance of the purchase price under the terms of a contract for deed. In May 2007, Gary and Tammy separated and on May 6th Tammy filed for divorce. Gary remained in the home and continued to make payments on the contract for deed. In June 2007, Gary sold a farm he had inherited from his mother for a net proceed of $246,008.12. On July 3, 2007, he deposited the proceeds from the sale into a newly opened account with Herring Bank, bearing account number 5860709. On December 18, 2007, via a check drawn on that account, he paid off the balance of the purchase price of the marital residence and received a warranty deed from the seller.

Thereafter, Gary filed a counter-petition seeking reimbursement and economic contribution for funds expended from his separate estate for the benefit of the marital estate arising from the payment of the balance due on the community property marital

2

residence. Tex. Fam. Code Ann. § 3.402(a) (Vernon Supp. 2009).[1] Gary maintained that the full payment was from his separate property, whereas Tammy contended that the account had lost its separate property character due to commingling of community funds. At the final hearing, Gary and Tammy testified and offered various exhibits in support of their respective positions. At the conclusion of the hearing, the trial court found that (1) Gary failed to trace, by clear and convincing evidence, his separate property funds from the Herring Bank account to the payoff on the marital residence and (2) even if sufficiently traced, the economic contribution statute did not apply because the contract for deed was not a debt secured by a lien as contemplated by section 3.402(a)(3)(B) of the Texas Family Code.

Other issues regarding the division of the community estate having been resolved, the trial court awarded each party an undivided one-half interest in the marital residence. In addition, the trial court granted Gary the right to purchase Tammy's interest in the property by paying her $79,463.50 (one-half of the equity value of the marital residence), and failing such a buyout, the property would be sold and the proceeds divided equally.

---

[1]Economic contribution is the dollar amount expended on behalf of a marital estate. *See* Act of May 22, 2001, 77th Leg., R.S., ch. 838, § 2, Tex. Gen. Laws 1679, 1680-81, *amended by* Act of May 29, 2009, 81st Leg., R,S., ch. 768, § 3, 2009 Tex. Gen. Laws 1950, 1951 (now titled "Claim for Reimbursement; Offsets." Sections 3.401, 3.403, 3.406(c), 3.407, and 3.408 of the Family Code have been repealed. *See* Act of May 29, 2009, 81st Leg., R.S., ch. 768, § 11(3), 2009 Tex. Gen. Laws 1950, 1953. However, we apply the statutes in effect when Tammy filed for divorce in May 2007.

3

Per Gary's request, the trial court filed Findings of Fact and Conclusions of Law.[2]

As relevant to Gary's complaints, the trial court made the following findings:

4. The value of the property at 6701 Calumet, Amarillo, Texas is $158,927.

5. The debt described in the **Contract for Deed** in connection with the purchase of the property at 6701 Calumet is unsecured.

* * *

7. Pertaining to husband's *reimbursement* claim in connection with the subject debt pertaining to the 6701 Calumet property, husband did not overcome the community property presumption pertaining to the property used to pay the unsecured debt.

(a) Since husband seeks the reimbursement of his separate estate pertaining to the payment of the subject debt in connection with the 6701 Calumet property, husband must prove by clear and convincing evidence that separate property was used to pay such debt.

(b) Husband did not trace and clearly identify that sum of $136,917.31, or a specific part thereof was separate property.

(c) The Herring Bank account from which the check in the sum of $136,917.31 was written was co-mingled.

(d) No bank records, or other such documentation was offered or admitted into evidence in connection with the status of the subject account at the Herring Bank after the date of inception (7-3-07), to the date that the check in the sum of $136,917.31 was signed (12-18-07).

(e) The court is unable to determine the specific application of the payment of the $136,917.31 debt; e.g., how much

---

[2]Tex. R. Civ. P. 296.

4

went to principal, interest, taxes, repairs, closing costs, or any other aspects of such debt.

## Standard of Review-Findings of Fact

Findings of fact entered in a case tried to the bench have the same force and dignity as a jury's verdict upon questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *City of Clute v. City of Lake Jackson*, 559 S.W.2d 391, 395 (Tex.Civ.App.--Houston [14th Dist.] 1977, writ ref'd n.r.e.). However, conclusions of law are always reviewable de novo and the findings are not conclusive when a complete statement of facts appears in the record if the contrary is established as a matter of law or if there is no evidence to support the findings. *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex.App.–Houston [14th Dist.] 1985), *writ ref'd n.r.e.*, 699 S.W.2d 199 (Tex. 1985) (per curiam).

In our analysis, we will review Gary's contentions in a logical rather than sequential order, beginning with his second issue.

## I.      Finding of Fact 5 - Unsecured Status of Debt

In 2005, when Gary and Tammy purchased the marital residence located at 6701 Calumet, they entered into a Contract for Deed and paid $5,000 down on the purchase price of $153,000. The owner, Willa J. Thomas, carried the balance payable in monthly installments of $1,708.57 for ten years. The monthly payment included $278.33 for taxes and $107.49 for insurance. The contract provided that a fully executed Warranty

5

Deed would be issued upon final payment of the entire amount due. The economic contribution statute in effect at the time of the filing of the petition for divorce imposed an equitable lien on property of a marital estate for economic contribution in that property by another marital estate arising from a reduction of the principal amount of a debt "secured by a lien" on that property. *See* Act of May 29, 2009, 81st Leg., R,S., ch. 768, § 3, 2009 Tex. Gen. Laws 1950, 1951 (now titled "Claim for Reimbursement; Offsets").

Regarding Gary's claim for economic contribution, the trial court ruled as follows:

Clearly, this house was not done properly. The Court noticed right off, as the attorneys are well aware, that *there is no lien on this house*, which is highly unusual. The house was purchased, and even though the seller, I guess, in effect financed a portion of it -- although there is nothing in these instruments that show the lien in connection with that, just a reference to it in the so-called contract for deed -- that because of that, the specific statutory provision in the Texas Family Code, Section 3.401, claims for economic contribution and reimbursement, and 3.402, the requirements stated therein are not met. Specifically, statutory economic contribution only applies to debt, and only applies to debt that is secured by a lien. *There is no lien in these papers, so this is unsecured debt.*

(Emphasis added).

In support of his contention that there was a lien on the property supporting his claim for economic contribution, Gary relies on section 24.002(8) of the Texas Business and Commerce Code Annotated (Vernon 2007),[3] and section 5.081 of the Texas

---

[3]"Lien" means a charge against or an interest in property to secure payment of a debt or performance of an obligation, and includes a security interest created by agreement, a judicial lien obtained by legal or equitable process or proceedings, a common-law lien, or a statutory lien.

6

Property Code Annotated (Vernon Supp. 2009).[4] He argues that the Contract for Deed entered into for the purchase of the marital residence is an instrument for security for debts on real property akin to a lien. Tammy's position is that the Contract for Deed accomplished nothing more than an "equitable right" to performance under the contract, and no lien was created. We agree with Gary.

A contract for deed is an agreement by a seller to deliver a deed to property once certain conditions have been met. *Graves v. Diehl*, 958 S.W.2d 468, 470 (Tex.App.--Houston [14th Dist.] 1997, no pet.). The seller is not obliged to deliver legal title to the property until the purchaser pays the purchase price in full. *Id.* at 471. The legal effect of the contract is the same as that of a deed with a retained vendor's lien. *Ward v. Malone*, 115 S.W.3d 267, 271 (Tex.App.--Corpus Christi 2003, pet. denied), citing *Bucher v. Employers Casualty Co.*, 409 S.W.2d 583, 584 (Tex.Civ.App.--Fort Worth 1966, no writ) (noting that under a contract for sale, the purchaser becomes full beneficial or equitable owner and the seller holds a bare legal title, more in the nature of a security title to guarantee payment of the purchase price . . . .") Paramount title is in the purchaser and the seller retains a vendor's lien. *Bucher*, 409 S.W.2d at 584-85.

Notwithstanding Finding of Fact 5, the record in the underlying case establishes that the seller, Ms. Thomas, retained a vendor's lien in the marital property as a matter

---

[4]Section 5.081 describes how a purchaser may convert a property interest under an executory contract into recorded, legal title.

7

of law. Therefore, the trial court abused its discretion in finding that the debt described in the contract for deed executed in connection with the purchase of the property at 6701 Calumet was an unsecured debt to which the economic contribution statute did not apply. We sustain issue two.

## II. Finding of Fact 7 - Tracing

We now consider Gary's first issue. It is undisputed that Gary's separate property included a farm he inherited from his mother in 2001. Evidence in the form of a settlement statement dated June 29, 2007, established that he sold the farm in June 2007 for a net proceed of $246,008.12. At the final divorce hearing, Gary provided documentation that he opened a new account, bearing number 5860709 at Herring Bank on July 3, 2007, with a deposit of that exact sum and a designation of "SINGLE PARTY ACCOUNT WITH 'P.O.D' (Payable on Death)." Also admitted into evidence was a copy of a check from the Herring Bank account dated December 18, 2007, in the amount of $136,917.31 made out to Willa J. Thomas as a payoff on the balance of the purchase price of the marital residence located at 6701 Calumet. Those two facts alone establish prima facie evidence that the payoff was made, at least in part, from Gary's separate property funds. The question then becomes, based on Tammy's allegation of commingling of community funds, how much, if any, of that payoff did come from Gary's separate property funds?

8

With respect to that issue, Tammy does not dispute the separate property nature of the proceeds from the sale of the farm that Gary inherited from his mother or the tracing of those funds into the Herring Bank. Instead, she contends that the presumption of community property and the depositing of community property funds into that account require the trial court to conclude that those sums were community property because Gary failed to adequately trace his separate property.

In that regard, Gary testified that approximately $6,000 in community funds from employment and from payment on a note owed to him were deposited into the Herring Bank account. While Tammy does not claim additional deposits, she does contend that the separate property character of the payoff was not sufficiently traced because Gary did not provide supporting documentation of other transactions from the Herring Bank account from the date of inception to the date of payment of the debt. She concludes that the commingled funds defy resegregation and identification.

A party may bring a claim for reimbursement of payments made by one spouse's separate estate to the community estate. *Alsenz v. Alsenz*, 101 S.W.3d 648, 651-52 (Tex.App.--Houston [1st Dist.] 2003, pet. denied). The party seeking reimbursement has the burden of pleading and proving that the expenditures were made and that they are reimbursable. *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1982).

There is a statutory presumption that all property possessed by either spouse upon dissolution of the marriage is community property. *See* Tex. Fam. Code Ann. §

3.003(a) (Vernon 2006). *See also Tarver v. Tarver*, 394 S.W.2d 780, 783 (Tex. 1965). The degree of proof necessary to overcome the presumption is clear and convincing evidence. Tex. Fam. Code Ann. § 3.003(b) (Vernon 2006). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *Id.* at § 101.007. The proof must weigh more heavily than merely the greater weight of the credible evidence, but the evidence need not be unequivocal or undisputed. *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex.App.--Fort Worth 2004, no pet.).

To overcome the community presumption, the party asserting separate ownership must clearly trace the original separate property into the particular assets on hand during the marriage. *Cockerham v. Cockerham*, 527 S.W.2d 162, 167 (Tex. 1975). Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property. *Moroch v. Collins*, 174 S.W.3d 849, 856-57 (Tex.App.-- Dallas 2005, pet. denied). The burden of tracing is a difficult, but not impossible, burden to sustain. *Boyd*, 131 S.W.3d at 612. Mere testimony that property was purchased with separate funds, without any tracing of the funds, is insufficient to rebut the community presumption. *Id.* The burden is not discharged and the statutory presumption prevails if the evidence shows that the separate and community property defy resegregation and identification. *Tarver*, 394 S.W.2d at 783. However, when separate property is traced, the statutory presumption is dispelled. *Estate of Hanau v.*

10

*Hanau*, 730 S.W.2d 663, 667 (Tex. 1987). Any doubt as to the character of property should be resolved in favor of the community estate. *Boyd*, 131 S.W.3d at 612. When separate and community property are commingled in a single bank account, we presume the community funds are drawn out first, before separate funds are withdrawn, and where there are sufficient funds at all times to cover the separate property balance in the account at the time of the divorce, we presume the balance remains separate property. *Smith v. Smith*, 22 S.W.3d 140, 146 (Tex.App.--Houston [14th Dist.] 2000, no pet.).

Gary established, by testimony and documentation, the separate origin of the funds deposited in the Herring Bank account. He also established that the sum of $136,917.31, from that account, was used to discharge the debt on the community residence located at 6701 Calumet. The fact that $6,000 of community funds were deposited into that account does not defy resegregation and identification. Providing the community with the full benefit of the presumption that community funds were withdrawn as a part of that payoff, we conclude Gary provided clear and convincing evidence that not less than $130,917.31 ($136,917.31 - $6,000.00) was from his separate property funds. *See Smith*, 22 S.W.3d at 146 (presuming community funds are drawn out first). Thus, the trial court abused its discretion in finding that Gary did not trace his separate property funds by clear and convincing evidence. Issue one is sustained.

11

### III. Calculation of Appellant's Economic Contribution Under § 3.403(b) of the Texas Family Code[5]

Tab 9 in the index of Gary's brief contains a calculation of his economic contribution per the formula provided in section 3.403(b) of the Texas Family Code. Gary calculates his separate property contribution to be $136,917.31; however, as set forth above, that figure is overstated by the sum of $6,000. Accordingly, we deduct $6,000 from $136,917.31 and conclude that Gary's claim for economic contribution should be limited to $130,917.31.

### Conclusion

In that portion of the decree dealing with the sale of the marital residence, the trial court granted Gary the right to purchase Tammy's interest for one-half of the community's equity interest in the property, or $79,463.50 ((fair market value minus Gary's economic contribution claim) ÷ 2 or ($158,927 - $ 0) ÷ 2 = $79,463.50). Because the trial court erroneously concluded that the debt in question was not secured by the property, it undervalued the amount of Gary's economic contribution claim, causing it to miscalculate the buy-out price. Therefore, the trial court's First Amended Final Decree of Divorce is reversed, in part, and reformed to provide that Gary shall have the right to purchase Tammy's interest in the community residence for $14,004.85 ((fair market

---

[5]A claim for economic contribution is determined by the formula set forth in section 3.403 of the Family Code, since repealed by Act of May 29, 2009, 81st Leg., R.S., ch. 768, § 11(3), 2009 Tex. Gen. Laws 1950, 1953.

value minus Gary's economic contribution claim) ÷ 2 or ($158,927 - $130,917.31) ÷ 2 = $14,004.85),  and in all other respects the judgment is affirmed.


                              Patrick A. Pirtle
                                  Justice


                                    13