

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TOWN OF ANTHONY, TEXAS, | § | No. 08-22-00052-CV |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law No. 7 |
| ROBERT LOPEZ, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2021CCV00055) |

## **O P I N I O N**

This appeal arises from the trial court's grant of a plea to the jurisdiction stemming from an eviction action. Appellant, the Town of Anthony, Texas (the Town), and Appellee Robert Lopez entered into a lease/purchase agreement for certain real property (the Property). After Lopez purportedly failed to timely pay rent under the lease, the Town filed a forcible-entry suit in justice court to evict Lopez from the property. The justice court entered a judgment of eviction and awarded the Town the claimed amount of unpaid rent. Lopez appealed to the county court and filed a plea to the jurisdiction, arguing that the justice court lacked jurisdiction to enter the eviction judgment because determining the right to possession necessarily implicated a title issue. The county court granted Lopez's plea to the jurisdiction and dismissed the case. The Town now appeals the county court's grant of the plea, arguing that the justice court had jurisdiction over the

case because the determination of the superior right of possession of the property would not require the determination of a title issue. For the following reasons, we disagree with the Town and affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In February 2013, the Town and Lopez entered into a "Lease Option Contract" in which Lopez agreed to rent from the Town certain real property in Anthony, Texas (the Property) and have the "right, option, and privilege" to purchase the same at any time during the term of the agreement. The lease term was through April 2030 "or until such time as Tenant/Buyer exercises his option to purchase the Property upon the terms contained [in this] contract." The "Option Purchase Terms" section of the agreement states: "The Tenant/Buyer agrees to pay for said property the sum of $255,000 as follows" then goes on to name the terms. First, Lopez "will deposit the sum of $5,000 at the time of closing." Second, "rental shall be at the sum of $1,000 per month for the first thirty-six (36) months of this agreement" and thereafter $1,250 per month "until the total sum of $255,000 has been paid in full." Finally, Lopez was to pay $1,200 annually on January 1 of each year from 2014 on "until the expiration of this contract. (Said sum shall be in lieu of taxes due on the property)." In return, the Town would deliver unencumbered, marketable title by a general warranty deed to Lopez upon full compliance with all terms.

On the same day the Town and Lopez executed the lease, Lopez tendered, and the Town accepted, a check for $5,000, with the notation "Down Payment" in the memo line. In the payment history log, the Town credited Lopez's rent payments of $1,000 for the first twenty-nine months and $1,250 per month thereafter starting on the thirtieth month rather than the thirty seventh. Several years into the agreement, between April 2018 and December 2020, Lopez began missing the monthly payments, amassing a past-due balance of $15,482 as of December 2020, according

2

to the Town. At same time, the Town's payment history indicated that Lopez made several payments, which the Town accepted, in an amount greater than the $1,000 or $1,250 monthly payments, including: (1) a $6,000 payment in February 2015; (2) a $10,000 payment in October 2016; and (3) eight separate payments ranging between $1,800 and $3,000 between July 2015 and February 2018.

In October 2020, the Town served Lopez with a notice to vacate the Property, and on December 10, 2020, the Town filed a petition for eviction in the justice court, alleging unpaid rent in the amount of $15,482 as the sole ground for eviction and including a suit for unpaid rent. The justice court ruled in favor of the Town and awarded it possession of the Property and the claimed amount of past-due rent.

Lopez appealed to the county court and filed a plea to the jurisdiction, arguing that the justice court lacked subject-matter jurisdiction to entertain the eviction suit because he had exercised his purchase option under the parties' agreement. In support thereof, he proffered the Town's justice-court petition, the contract, the $5,000 "down payment" check, and the Town's payment history. The Town responded that there was no title dispute because (1) Lopez failed to strictly comply with the agreement terms; (2) Lopez failed to tender the $1,200 annual payments in lieu of property taxes; and (3) there was no indication in the record that Lopez maintained property insurance or delivered copies of the insurance policies to the Town pursuant to the rental terms. The Town also highlights that it never deeded the Property to Lopez and that Lopez never expressly notified the Town he was exercising the purchase option notwithstanding the $5,000 check.

Disagreeing with the Town, the county court granted Lopez's plea to the jurisdiction and dismissed the Town's case, stating in its order that Lopez "raised an issue of title that must be

3

decided before possession of the property can be determined." This appeal followed. Raising one sole issue, the Town challenges the county court's grant of the plea to the jurisdiction, arguing that the justice court had jurisdiction to entertain its eviction case because Lopez failed to raise a title issue.

## II. DISCUSSION

### A.    Applicable law and standard of review

For state trial courts of limited jurisdiction, "the authority to adjudicate must be established at the outset of each case, as jurisdiction is never presumed." *Gonzalez v. Wells Fargo Bank, N.A.*, 441 S.W.3d 709, 712 (Tex. App.—El Paso 2014, no pet.) (quoting *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000)). Texas justice courts are limited-jurisdiction courts having original jurisdiction over a limited class of actions, including forcible detainer cases. *Id.* (citing TEX. GOV'T CODE ANN. § 27.031(a)(2)). "Jurisdiction of forcible detainer actions is expressly given to the justice court of the precinct where the property is located and, on appeal, to county courts for a trial de novo." *Id.* (quoting *Rice v. Pinney,* 51 S.W.3d 705, 708 (Tex. App.—Dallas 2001, no pet.)).

As the Town points out, a forcible detainer suit is a simple and cost-effective way to determine right to possession. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 919 (Tex. 2013) (internal quotation marks and citation omitted). To that end, the only issue in a forcible detainer action is who has the right to immediate possession of the premises; questions of a party's title to the premises are beyond the scope of a forcible-detainer action. *See* TEX. R. CIV. P. 510.3(e); *Gonzalez*, 441 S.W.3d at 712 (citations omitted). Once a question of title is raised through specific evidence of a title dispute, then the justice court no longer has jurisdiction because the matter no longer involves only a determination of the immediate right to possession. *Borunda v. Fed. Nat'l Mortg. Ass'n*, 511 S.W.3d 731, 734 (Tex. App.—El Paso 2015, no pet.) ("Specific

4

evidence of a title dispute is required to raise an issue of a justice court's jurisdiction.") (quoting *Padilla v. NCJ Dev., Inc.*, 218 S.W.3d 811, 815 (Tex. App.—El Paso 2007, pet. dism'd w.o.j.)). "[I]f the question of title is so intertwined with the issue of possession, then possession may not be adjudicated without first determining title." *Gonzalez*, 441 S.W.3d at 712 (quoting *Dormady v. Dinero Land & Cattle Co., L.C.*, 61 S.W.3d 555, 557 (Tex. App.—San Antonio 2001, pet. dism'd w.o.j.)). If there is a genuine issue of title, neither the justice court nor the county court on appeal has jurisdiction to decide the case. *Id.* (citing *Dormady*, 61 S.W.3d at 558).

A party may challenge a trial court's subject-matter jurisdiction through a plea to the jurisdiction, which, when granted, defeats a cause of action without regard to whether the claims asserted have merit. *Hernandez v. Sommers*, 587 S.W.3d 461, 467–68 (Tex. App.—El Paso 2019, pet. denied). A trial court's ruling on a plea to the jurisdiction is a question of law that we review de novo. *Suarez v. City of Texas City*, 465 S.W.3d 623, 632 (Tex. 2015).

### B. Lopez's exercise of the purchase option converted the lease agreement to a purchase agreement, which implicated an equitable title dispute

Lopez argues that he properly exercised the purchase option, which effectively terminated the landlord-tenant relationship thereby raising a title issue that deprived the lower courts of jurisdiction. Lopez explains that the only requirement for exercising the purchase option was for him to notify the City of the same by tendering the $5,000 check with the notation "Down Payment." Because the lease term was through April 2030 "or until such time as Tenant/Buyer exercises his option to purchase the Property upon the terms contained [in this] contract," Lopez argues he exercised his right to purchase the Property upon tendering the $5,000 down payment, at which point, the lease agreement was converted to a purchase agreement. In support thereof, Lopez cites to Texas Supreme Court precedent holding that the landlord-tenant relationship ends

5

when the tenant/buyer exercises its option to purchase, whereupon the relationship becomes that of vendor-purchaser. *Pitman v. Sanditen*, 626 S.W.2d 496, 497-98 (Tex. 1981). Lopez argues that he acquired equitable title by exercising the option to purchase and moving forward on the contract for deed; completing the purchase was not required to implicate a title issue even though the Town was to deliver unencumbered, marketable title at that point.

Moreover, Lopez also cites *Bucher v. Employers Cas. Co.*, where the Fort Worth court of appeals recognized that a contract for deed effects an ownership change resulting in the purchaser becoming the equitable owner of property with the seller only retaining "bare legal title" as a matter of security. 409 S.W.2d 583, 584 (Tex. App.—Fort Worth 1966, no writ.). Although arguably dicta, the Texas Supreme Court endorsed this understanding when it cited to *Bucher* in an explanatory parenthetical. *See Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 949 (Tex. 1990) ("contract of sale effects change of ownership wherein purchaser becomes equitable owner of the property while all that remains in seller is bare legal title, more in the nature of security to guarantee payment than anything else"). Moreover, the Amarillo court of appeals recognized that a contract for deed has the effect of transferring paramount title to the purchaser, while leaving the seller with a vendor's lien. *Norton v. Norton*, No. 07-08-0469-CV, 2010 WL 2816212, at *3 (Tex. App.—Amarillo July 19, 2010, no pet.) (mem. op.).

Lopez also cites to a case from our sister court for the proposition that "[t]he legal effect of the contract [for deed] is the same as that of a deed with a retained vendor's lien." *Ward v. Malone*, 115 S.W.3d 267, 270 (Tex. App.—Corpus Christi 2003, pet. denied) (citation omitted). Similar to the contract here, the contract at issue in *Ward* did not specify what would happen to the parties' relationship in the event of a default in payments. *Id.* at 271. Lopez distinguishes the cases the Town cites wherein the contracts at issue included provisions explicitly addressing the

relationship of the parties upon default by the buyer, e.g., that the buyer's default would cause the parties' relationship to revert to a landlord-tenant relationship or that default would authorize a forcible detainer action. *See, e.g., Rice*, 51 S.W.3d at 712; *Martinez v. Daccarett*, 865 S.W.2d 161, 163–64 (Tex. App.—Corpus Christi 1993, no writ); *Home Sav. Ass'n v. Ramirez*, 600 S.W.2d 199, 913–14 (Tex. App.—Corpus Christi 1980, writ ref'd n.r.e.); and *Haith v. Drake*, 596 S.W.2d 194, 196 (Tex. App.—Houston 1980, writ ref'd n.r.e.).

"When a tenant under a lease containing an option to purchase exercises the option, . . . [t]the relation of landlord and tenant ceases and that of vendor and purchaser arises." *Pitman v. Sanditen*, 626 S.W.2d 498 (Tex. 1981). And because a forcible-detainer action is dependent on proof of a landlord-tenant relationship, the question of equitable title arose and the forcible detainer suit could not be maintained. *See Tressider v. Rhyme*, No. 13-03-422-CV, 2004 WL 1902747, at *2 (Tex. App.—Corpus Christi Aug. 26, 2004, no pet.) (mem. op.) (citing *Aguilar v. Weber*, 72 S.W.3d 729, 733 (Tex. App.—Waco 2002, no pet.), and *Ward*, 115 S.W.3d at 271.

### C.     The Town's position is not availing in this case

The Town argues that Lopez's claim that he exercised his option to purchase the property was insufficient evidence to demonstrate the existence of a title dispute because he failed to strictly comply with all of purchase option terms so as to consummate the purchase, at which time the Town would deliver unencumbered marketable title to Lopez. In support thereof, the Town cited persuasive authority from our sister courts, arguing that in the absence of equitable considerations, a prospective buyer must strictly comply with the terms of an option contract. *See, e.g.*, *Levu GP, LLC v. Pacifico Partners LTD*, No. 05-16-01167-CV, 2018 WL 4039638, at *4 (Tex. App.— Dallas Aug. 23, 2018, pet. denied) (mem. op.). The Town asserts that Lopez did not have legal title because the Town did not convey a deed to him, and that he also lacks equitable

7

title because he failed to provide specific evidence of his strict compliance with the agreement's purchase-option section.

The Town explains that the option provision imposed other requirements on Lopez to exercise the option, which Lopez failed to perform. The Town argues that Lopez failed to (1) pay the monthly amounts due, regardless of whether those amounts are considered rent or partial payments of a purchase price; (2) pay the $1,200 annual payments; and (3) maintain property insurance or deliver copies of the insurance policies to the Town.[1] The Town seems to acknowledge that the $5,000 check marked "Down Payment" is some evidence of Lopez's notification to the Town that he was exercising the option, but the Town contends that the amount was to be deposited "at the time of closing," not when the parties entered into the lease.[2] In its arguments, The Town does not address any of the additional payments Lopez made according to the Town's payment history.

The Town directs our attention to several cases discussing whether a tenant's claim to have exercised a purchase option created a title dispute that deprived the justice and county courts over eviction suits, but those cases are distinguishable. In *Dorta v. Rave*, the tenants and landlords entered into a lease that contained a purchase option. No. 09-12-00376-CV, 2014 WL 69564, at *1 (Tex. App.—Beaumont Jan. 9, 2014, no pet.) (mem. op.). The landlords subsequently filed an eviction suit against the tenants, during which one of the tenants produced a receipt from the lessors for a $5,000 "down payment on [the] house" and testified that he never received a deed to the house. *Id.* The trial court entered findings indicating that the tenants had exercised the purchase

---

[1] This insurance-related provision did not pertain to the purchase option terms.

[2] We note that the agreement language uses the term "closing" multiple times and in ways distinguishable from the manner in which closing is traditionally used in real estate sales, thus we do not take the provision "Tenant/Buyer will deposit the sum of $5,000.00 at the time of closing" to mean at the closing of the property sale.

option and thus there was a title dispute that precluded jurisdiction over the eviction suit, but the court dismissed the case on the merits of the landlords' claim for possession. *Id.* The Beaumont court of appeals reversed the trial court's judgment, reasoning that there was no title dispute because, among other reasons, the tenants had not shown that they fully complied with all the purchase option obligations under the lease, particularly the tenants' obligation to pay the landlords' taxes and insurance expenses associated with the house. *Id.* at *5. The court held that the evidence was legally insufficient to show that title was at issue and awarded the landlords possession of the property. *Id.* But as Lopez points out, *Dorta* is distinguishable because there was no evidence that the tenants had made a down payment that was required to exercise their purchase option. *Id.* at *4. In contrast, the record in this case contains some evidence that Lopez exercised the purchase option by tendering a $5,000 check with "Down Payment" in the memo line and by tendering additional payments beyond what was required under the lease terms.

The Town also cites *Haith v. Drake* for the proposition that a tenant's failure to fully satisfy his obligations under a contract for deed did not raise an issue of equitable title that would preclude the justice court's jurisdiction in a forcible detainer suit. 596 S.W.2d 194, 197 (Tex. App.— Houston [1st Dist.] 1980, writ ref'd n.r.e.) The Houston court of appeals reasoned that although the buyer might possess equitable rights to the property, he did not have equitable title until he fully performed his obligations under the contract. *Id.* But as the Corpus Christi court noted in *Ward*, the agreement in *Haith* contained an explicit contract term stating that the parties would revert to a landlord-tenant relationship in the event of default, and the Corpus Christi court held that a title issue is raised in the absence of contract language dictating the parties' statuses in

the event of default. *Id.*; *see also Ward*, 115 S.W.3d at 271.[3] The agreement before us is more analogous to the situation in *Ward* because the agreement contains no language expressly stating the parties' statuses upon Lopez's default, thus raising a question of title.

The Town also cites *Lugo v. Ross* for the proposition that regardless of whether a buyer exercised an option, the buyer does not have equitable or legal title. 378 S.W.3d 620, 623 (Tex. App.—Dallas 2012, no pet.). But in that case, the buyer did not dispute that he lacked title to the property at issue. *See id.* In contrast, the basis of Lopez's plea to the jurisdiction is that title was at issue and thus deprived the justice court of jurisdiction. Moreover, to the extent the Dallas court and other intermediate appellate courts have recognized that a buyer does not have equitable title to property until fully paying the purchase price and satisfying his obligations under the contract, that position is merely persuasive, not binding on this court. *See id.*; *Yarto v. Gilliland*, 287 S.W.3d 83, 89–90 and n. 11 (Tex. App.—Corpus Christi 2009, no pet.) (recognizing that a purchaser must pay the full purchase price and fully satisfy his obligations under the contract to acquire equitable title); *see also Martinez Jardon v. Pfister*, 593 S.W.3d 810, 823 (Tex. App.— El Paso 2019, no pet.) (recognizing that although intermediate appellate courts in Texas may consider precedent from other appellate courts to be persuasive, appellate courts are not bound to follow precedent from other appellate courts).

### D.     In sum, the justice court did not have subject-matter jurisdiction

As a state trial court of limited jurisdiction, the justice court's "authority to adjudicate must be established at the outset of each case, as jurisdiction is never presumed." *Gonzalez*, 441 S.W.3d

---

[3] The *Ward* court also distinguished other cases involving express language dictating the parties' statuses upon default. *See Rice v. Pinney*, 51 S.W.3d 705, 712 (Tex. App.—Dallas 2001, no pet.); *Martinez v. Daccarett*, 865 S.W.2d 161, 163–64 (Tex. App.—Corpus Christi 1993, no writ); *Home Sav. Ass'n v. Ramirez*, 600 S.W.2d 199, 913–14 (Tex. App.—Corpus Christi 1980, writ ref'd n.r.e.).

at 712 (quoting *Dubai Petroleum Co.*, 12 S.W.3d at 75 ). We recognize that the Town's cited cases suggest that an issue of equitable title is not raised by anything less than a buyer's complete performance of his obligations under a contract for deed. However, as the state's intermediate courts differ in opinion over when equitable title is implicated, we cannot expect as a matter of policy that the justice court—whose task in a forcible-detainer action is to provide a simple, speedy determination of immediate possession—could presume it had jurisdiction here. The parties' agreement, Lopez's tendering of the $5,000 check with a "Down Payment" notation, and his payments exceeding the amount due under the lease as reflected in the Town's payment history on the property, all constitute specific evidence that raise a question of equitable title so as to preclude the justice court's exercise of jurisdiction in this case. *See Padilla*, 218 S.W.3d at 815.

Accordingly, we overrule the Town's sole issue on appeal.

### III. CONCLUSION

We affirm the county court's order granting Lopez's plea to the jurisdiction.

LISA J. SOTO, Justice

February 23, 2023

Before Rodriguez, C.J., Soto, J., Marion, C.J. (Ret.)
Marion, C.J. (Ret.) (sitting by assignment)

11